HARTFORD LAW LIBRARY

---

PINNEY and another *against* BARNES:

IN ERROR. (*a*)

If an executor be removed from office before the final settlement of the estate, and an administrator *cum testamento annexo* be appointed in his p ace, the latter, as soon as he is appointed, becomes the sole representative of the estate of the deceased, and is entitled to all the moneys then in the hands of the former belonging to the estate, though the time for the payment of such moneys to the persons ultimately entitled to receive them, has not yet arrived.

Where the cause of action is the same, a former judgment in a suit between the same parties, though an inadequate one, is a bar to a second recovery.

Where a suit is brought in the name of the judge of probate, against an executor, upon his probate bond, the plaintiff, though a trustee for different claimants, has the sole legal interest in the cause of action; and he has no more right to multiply suits and divide one cause of action into many, unnecessarily, than any other plaintiff.

A suit was brought, in the name of the judge of probate, against a removed executor, on his probate bond; in which suit sundry breaches were assigned, and among them, that the defendant had neglected and refused, upon demand made therefor, to pay over to his successor the moneys in his hands belonging to the estate; and thereupon judgment was rendered against the defendant for a certain sum and costs. On a *scire-facias* afterwards brought on this judgment, it appeared, that the testator had given by his will certain legacies, payable to the legatees respectively when they should become

(*a*) This case was argued in *June,* 1845, but was not decided in sufficient season to be reported with the other cases of that term. The fittest place for it to come in, now, seems to be at the close of the year; and accordingly it is here inserted.

eighteen years of age; that neither at the time of the defendant's removal from office, nor at the trial of and judgment in the original action, had these legatees arrived at that age; that the defendant had then in his hands moneys belonging to the estate, derived from a sale of lands under a decree of probate, sufficient to pay such legacies, which he still retained ; that on the trial of such action, no claim was made or evidence offered in relation to the non-payment of such legacies, nor were they considered by the court or included in the judgment, the action having been instituted and prosecuted solely for the benefit of those entitled to the *residuum* of the estate after the payment of such legacies. Held, that the former judgment must be considered as covering the whole ground, and constituting a bar to any claim for the legacies, in the *scire-facias*, the cause of action in both suits being essentially the same. [By three judges against two.]

THIS was a writ of *scire-facias*, brought by *William Barnes*, Esq., as judge of probate, against *Ebenezer Pinney* and his surety, on a judgment recovered by said judge against them, before the county court, in *September*, 1841, for the sum of 111 dollars, damages, and for 55 dollars, 61 cents, costs of suit, in an action on a bond given by the defendants to the plaintiff, conditioned for the faithful performance, by *Pinney*, of his duties of executor of the last will and testament of *Mary Allen*, deceased. In the *scire-facias* it was alleged, that said *Benjamin Pinney*, as executor of said *Mary Allen*, had received, and then retained in his hands, the sum of 100 dollars, which it was his duty, as such executor, to pay to *Delinda Allen* and *Rosanna E. Allen*, daughters of *Israel Allen*, in discharge of certain legacies given to them by the will of said *Mary Allen ;* which legacies had long since become due and payable ; that he had been often requested to pay said legacies, particularly, on the        day of         1843 ; that although he had always had in his hands ample funds for the payment thereof, after payment of the debts of said estate, the other legacies bequeathed by said *Mary* in her will, and the expenses of settling said estate, yet he had wholly neglected and refused to pay the same. It was further alleged, that the non-payment of said legacies was not assigned as one of the breaches of the condition of said bond, in the action aforesaid ; nor did the sum so due to the Misses *Allen* constitute any part of the damages assessed upon the breaches assigned ; nor was it in any way considered or included therein.

The defendants pleaded, 1st, That the allegations of the plaintiff in his declaration, were not true.

2dly, That said *Pinney*, on the          day of *December*, 1839, was, by the court of probate, removed from the office of executor of the will of said *Mary Allen*, after which he had no power or authority to perform any of the duties or execute any of the trusts of said will, and that *Sumner Shepard* was, by said court, on the 10th of *April*, 1840, appointed an administrator on said estate with the will annexed, and became at that time duly qualified to act as such; that the removal of said *Pinney*, and the appointment, acceptance and qualification of said *Shepard*, were before the trial of the action in which the judgment mentioned in the plaintiff's declaration, was rendered; that the legacies payable to the Misses *Allen* were not to be paid to them until they respectively became eighteen years old, but were to be paid to them when they reached that age; that at the time of said removal and appointment, and of the trial of said action, neither said *Delinda Allen*, nor said *Rosanna E. Allen*, had arrived at the age of eighteen years: wherefore the defendants denied that the non-payment of said legacies, by said *Pinney*, to the legatees, was, or could be, a breach of said probate bond.

3dly, That after said *Pinney* ceased to be executor, and after the appointment, acceptance and qualification of said *Shepard* as administrator as aforesaid, and before the trial of said action on the probate bond, said *Shepard* duly demanded of said *Pinney* that he should deliver up to him, as administrator, all the estate of said *Mary Allen*, unadministered; that said *Pinney* refused to deliver over to him said estate, having then in his hands the sum of 111 dollars, which it was his duty to deliver over to said administrator; that the plaintiff thereupon brought the action set forth in his declaration, and for said default and other breaches of said bond, recovered of the defendants said sum of 111 dollars; in support of all which breaches respectively evidence was introduced on said trial; which sums, so recovered, the defendants have since paid to the plaintiff.

From the record of the judgment referred to, it appeared, that the plaintiff in that action assigned sundry breaches of the bond, one of which only, *viz.* the 8th, it is now material to state. After stating the removal of *Pinney* as executor, and the appointment of *Shepard* as administrator with the will annexed, it was alleged, that afterwards, *viz.* on the          day

of        said *Shepard*, as such administrator, made demand of said *Pinney* for all the money, property, choses in action and all other things whatsoever, in the hands of said *Pinney*, belonging to said estate, or to which said *Shepard* was entitled, as said administrator; and said *Pinney* then and there refused to deliver the same, or any of them, to said *Shepard*, although said *Pinney* then and there had in his hands a large amount of money and other property belonging to said estate, *viz.* the sum of 1000 dollars.

To the several pleas of the defendants in the present action the plaintiff replied as follows.

On the first plea he joined issue with the defendants.

To the second plea the plaintiff replied, That before the removal of said *Pinney* from his said office, he settled his account with the court of probate to which the settlement of said estate by law appertained, and in his account credited himself with the amount of said legacies and interest, showing a balance due to him on said administration account of a large sum, *viz.* the sum of 315 dollars, 82 cents, which sum included the amount due for said legacies; and thereupon, on motion of said administrator, said court ordered a sale of real estate to pay said balance, said legacies being, by said will, charged on land; and said administrator, pursuant thereto, sold land sufficient to pay said balance, with incident charges, and received payment therefor, made returns of his said sales to said court, which was by said court accepted, and has ever since held, and still holds, said funds.

To the third plea, the plaintiff, after stating the facts alleged in the preceding replication, averred, That after the sale of said real estate for the payment of said legacies, said *Pinney* collected of one *Davis* a debt due the estate of the deceased, amounting to 111 dollars; and that those entitled to the *residuum* of the estate, having demanded the same of said *Pinney*, and it not having been paid by him, caused a suit to be instituted on said suit therefor, and for certain other sums claimed by them to be due thereon from him; which suit was instituted long before said *Shepard* was appointed administrator, or had made any demand of said *Pinney;* and on the trial of said action, no claim was made or evidence offered in relation to the non-payment of said legacies, and they were not considered by said court, nor included in said judgment;

THAYER LAW LIBRARY

*Hartford,*
June, 1845.

Pinney
*v.*
Barnes.

that said action was instituted and prosecuted solely for the benefit of those interested in the *residuum* of the estate, after the payment of all the legacies specified in the will ; that at the time said action was commenced, said *Delinda* and *Rosanna* were each of them under the age of eighteen years, and had never made any demand upon said *Pinney* for their legacies, and they never did make demand thereof until long after the commencement of said action and the rendition of the judgment therein, *viz.* on the 15th of *September*, 1845; and the amount thereof, with interest, still remains in the hands of said *Pinney*, after payment of said judgment for 111 dollars.   The replication then traversed the allegations in the third plea, that said *Pinney*, at the commencement of said action, had in his hands of said estate the sum of 111 dollars, and no more ; and that said *Pinney* had been guilty of no breach of said bond, since the commencement or trial of said action.

On the replications to the second and third pleas issues were joined.

The cause was tried, on the issues thus joined, at *Hartford,* at an adjourned term in *March*, 1845, before *Williams*, Ch. J.

On the trial, the plaintiff offered evidence to prove, that on the trial of the action mentioned in the plea of the defendants, no claim was made by the plaintiff, in behalf of said legatees, for the avails of the land sold to pay said legacies ; but that the suit was brought and prosecuted solely for the use and benefit of those who were entitled to the *residuum* under the will.   To the admission of this evidence the defendants objected, claiming that said legacies were, or might have been, recovered in the former action, and that the former judgment precluded any such inquiry.   The court overruled the objection, and admitted the evidence.   The issues were found for the plaintiff, and thereupon judgment was rendered in his favour.   The defendants moved for a new trial, on the ground that said evidence was inadmissible, and also brought the record, by motion in error, before this court, for revision.

*Hungerford* and *Ellsworth*, for the plaintiffs in error, contended, 1. That the original action was brought for not delivering over *all the property* belonging to the estate of the deceased, then in the hands of *Pinney*, amounting to the sum

Hartford,
June, 1845.

Pinney
*v.*
Barnes.

of 1000 dollars. The breach assigned was entire, covering the whole property. It had nothing to do with the legatees, or those interested in the *residuum*, or the sources from which it was derived. *Shum* v. *Farrington*, 1 *Bos. & Pul.* 640. 643,

4. As the bond was to settle the estate according to law, and the law requires the property to be delivered over, it stands, so far as this breach is concerned, upon the same ground as if the condition of the bond had been limited to this single object, and a breach of it assigned that *Pinney* had not delivered over. The damages recovered were to be disposed of according to law; no class of claimants having any preference, except as the law gave it.

2. That there had been no breach of the bond in respect to the legacies in question. In the first place, the executor was removed long before the legacies became due and payable to the legatees. Secondly, it became the duty of the administrator *cum testamento annexo*, to demand of the executor all the property, and of the executor to deliver it up. Thirdly, as soon as the executor was removed, he ceased to be a trustee, or an officer, or to have any power officially, except to surrender the property. *Taylor* v. *Savage*, 1 *How. R.* 282. 286. Fourthly, the breach, to make him liable, must be a breach of *official duty;* otherwise he cannot be subjected on the bond.

3. That if the plaintiff in the original action omitted to prove any part of his claim, he cannot sustain a new suit for it. The case of *Seddon* v. *Tutop*, 6 *Term R.* 607. and other cases depending upon the same principle, are not applicable to this case; the suit in those cases being for a distinct cause of action. *Bunnel* v. *Pinto*, 2 *Conn. R.* 431. *Guernsey* v. *Carver*, 8 *Wend.* 492. *Dunn* v. *Murray*, 9 *B. & Cres.* 780. (17 *E. C. L.* 498.)

4. That upon the same principles, the testimony offered was inadmissible. It appears, that the breach was entire; and that there was a recovery under it; and hence it follows, that the testimony to prove another breach, in a subsequent suit, was not admissible.

*T. C. Perkins*, for the defendant in error, insisted, 1. That *Pinney* having in his hands money derived from the estate of his testatrix, belonging to the legatees, for which he had

HARVARD LAW LIBRARY

*Hartford,*
*June, 1845.*

Pinney
*v.*
Barnes.

never accounted, was liable on his bond for this breach of duty.

2. That the former judgment was not conclusive to show, that this claim was acted upon and allowed in the former suit. In the first place, it does not appear from the record that this was done, *in point of fact.* Secondly, the former recovery affords *no presumption of law,* which may not be rebutted, that this was done. *Seddon* v. *Tutop,* 6 *Term R.* 607. and other cases already brought to the notice of the court.

3. That this is the proper remedy. A *scire-facias* may be taken out for *further* or *other* breach of duty. *Stat.* 57. *tit.* 2. *c.* 1. *s.* 60. (ed. 1838.)

4. That this is literally a *further* and *other* breach; further, inasmuch as it had not occurred at the time of the first trial, the legacies not being then payable ; and other, inasmuch as it was not considered by the court, and not included in the former judgment, and also because it affected the rights of a different class of persons, *viz.* the legatees, whereas the former breaches affected the rights of the heirs only, or those interested in the *residuum* of the estate.

5. That if these positions are correct, it follows, of course, that the testimony adduced on the trial, was properly received.

CHURCH, J. If money remained in the hands of *Pinney* after his removal from the office of executor, received by him in the course of his administration and belonging to the estate which he had represented, a neglect or refusal by him to pay it over to the person legally entitled to receive it, would subject him upon his probate bond. But the first question suggested by this record, is, to whom was such money payable, and who had a right to demand it of the defendant—the legatees under the will of the deceased, or the administrator with the will annexed? *The United States* v. *Nichols,* 12 *Wheat.* 505. This action is a *scire-facias,* founded upon the original judgment on the probate bond of the defendant, by which a breach of the condition was ascertained and a forfeiture declared. The plaintiff now goes for a further breach, occasioned, as he says, by the refusal of the defendant, since he ceased to be executor, to pay over moneys in his hands to legatees ; and he avers, that the non-payment of the legacies was not assigned as a breach of condition of the probate

*Hartford,*
June, 1845.

Pinney
*v.*
Barnes.

bond, in the action brought upon it. The refusal of the defendant, *Pinney,* to pay these legacies to the legatees, since his removal from the trust of executor, is the only further breach of condition now assigned in this writ of *scire-facias.* But a majority of the court are of opinion, although the legacies, when the defendant was removed from his office, were not then payable to the legatees, by reason of their minority, that all the moneys then in the defendant's hands, as executor, became due and payable from him to his successor, the administrator with the will annexed, who, as soon as he was appointed, became the sole representative of the estate of the deceased, and entitled to all the money due from the defendant to the estate, to be by him paid out and distributed according to the provisions of the will and the orders of the court of probate.

*Pinney* had been deprived of his office of executor, and there was no longer any privity between him and the heirs, legatees or creditors of the estate. He was no longer trustee for any of them; and the money in his hands belonging to the estate, no matter from what source received, nor for whom ultimately destined, he held subject only to the demand of the new administrator. If this money in the hands of *Pinney,* arising from the sale of lands or otherwise, had been for the payment of the debts of the testator, would it have been his duty, after his removal from his trust, still to proceed as executor to pay off the debts, and take creditors' receipts, and account with the judge of probate? And if he had neglected to do this, instead of paying the money to his successor, could this have been imputed to him as a further breach of the condition of his probate bond? We think it quite certain, that instead of doing this, and thus acting the part of executor after he had ceased to be such, it would have been his duty to pay the money to the administrator with the will annexed. And so this plaintiff considered it, when he commenced and prosecuted the original action upon the probate bond, which was founded and prevailed upon this principle alone. And because legatees, instead of creditors, are interested in this fund, no good reason exists for holding that the obligation of *Pinney,* in this respect, was at all changed. His business was still with the new administrator, and with no body else. The 23d section of the statute regulating the settlement of estates

*Hartford,*
June, 1845.

Pinney
*v.*
Barnes.

confirms this opinion. It enacts, "in case of the removal of an executor or administrator, and the appointment of a new administrator, that such administrator shall have power, and it shall be his duty, to ask for, demand and receive of the executor or administrator so removed, all the goods and effects of the deceased," &c. The corresponding legal duty of the removed executor, therefore, must be, to pay and deliver over all to the administrator with the will annexed. We conclude, therefore, that now to assign it as a new breach of the condition of the probate bond, that *Pinney* had not paid over the money, since his removal, to the legatees, is a fallacy—a mere cover to conceal an old breach of condition considered in the former suit, by putting upon it a new dress.

If these views are correct, then no sufficient breach is set out in this writ; and then, also, the former judgment covered the whole ground, and is a bar to the present demand.

It is conceded, that the money now sought to be recovered, was in *Pinney's* hands, when the former suit was commenced and judgment obtained. And whether it was raised for the payment of debts, legacies or other charges, we hold, that it was payable by him, after his removal from office, to his successor alone. There was no sign to distinguish any one portion of the money thus lying in mass in *Pinney's* hands from another, and mark it as belonging rather to one class of claimants than another. It was all money received by him in the course of administration, and payable by him to the same person. In this condition of things, demand was properly made, by the administrator with the will annexed, of *Pinney*, for all the money in his hands, received as executor, and then due to his successor; and upon his refusal to pay, a suit was commenced upon the probate bond, among other things, to recover this very money, amounting, as the plaintiff in that action alleged in his replication to the defendant's plea, under the eighth breach assigned, to the sum of one thousand dollars. Upon this assignment of breach of condition an issue was joined, and judgment recovered, by the plaintiff, for the amount which he proved to be due from *Pinney*.

The only difficulty, and perhaps misfortune, of the plaintiff, was, that he did not in that action prove his whole claim, as he had alleged it to be due in his replication, although it was equally in his power to have proved it then as now. And

*Hartford,*
June, 1845.

Pinney
*v.*
Barnes.

the court is now called upon, in this *scire-facias*, to come to his aid; which, a majority of us believe we cannot do, without departing essentially from well established and salutary legal principles. This case is like that of *Markham* v. *Middleton*, 2 *Stra.* 1259. in which the jury gave inadequate damages for one demand, because the plaintiff was not prepared at the trial with full proof of his whole claim. We suppose the law on this subject to be, that where the cause of action is the same, a former judgment, though an inadequate one, is a bar to a second recovery.

The superior court, in this case, admitted evidence to prove, that the plaintiff in the first action did not go into proof of the claim which he now makes. But whether he did or not, is not now the material inquiry; but whether the present cause of action is essentially the same as the first? For if it is, it is merged in the former judgment, whether the plaintiff intended it or not. A different doctrine would open all judgments to a new inquiry, and take from them their character for verity, so that instead of being conclusive of facts within their purview, they would frequently be the occasion, as in this case, of renewed controversy. *Bunnel* v. *Pinto*, 2 *Conn. R.* 431. *Miller* v. *Covert*, 1 *Wend.* 487. *Guernsey* v. *Carver*, 8 *Wend.* 492. *Smith* v. *Johnson*, 15 *East*, 213. *Hunn* v. *Murray*, 9 *B. & Cres.* 780. (17 *E. C. L.* 498.) 2 *Saund. Pl. & Ev.* 612. *Philips* v. *Berick*, 16 *Johns. R.* 136. *Irwin* v. *Knox*, 10 *Johns. R.* 365. *Whittemore* v. *Whittemore*, 2 *N. H. R.* 28. In the leading case of *Seddon* v. *Tutop*, 6 *Term R.* 607. 609. Lord *Kenyon* said, " that the plaintiff ought to show beyond all controversy, that the second was a different cause of action from the first," and that "they were not in the least blended together." The same principle is essentially recognized in Lord *Bagot* v. *Williams*, 3 *B. & Cres.* 285. (10 *E. C. L.* 62. 64.) in which *Bayley*, J. puts the case of a plaintiff having a demand of 60*l.*, consisting of three sums of 20*l.*, which became due to him at different times; if the jury, in such case, at the suggestion of the plaintiff, reduced the verdict to 40*l.*, he would be bound by it.

In all the cases relied upon by the plaintiff, upon this point, whether of judgments or awards, the causes of action or claims, in the first and second actions, were distinct, and could have been enforced by separate suits. But here, as we have

*Hartford,*
June, 1845.

Pinney
*v.*
Barnes.

seen, the causes of action in both cases, were the demand which the executor with the will annexed had against *Pinney*, for all the moneys remaining unadministered in his hands, after his removal from the office of executor. The money now in his hands, if any, was parcel of the very money then sued for and recovered.

That the plaintiff is judge of probate, and sues in both cases as trustee for different claimants, cannot vary the principle. He has the sole legal interest in this cause of action, arising upon the probate bond, and has no more right to multiply suits and divide one cause of action into many, unnecessarily, than any other plaintiff. Such a proceeding, if permitted, would be vexatious and intolerable. He may prosecute writs of *scire-facias* for subsequently accruing breaches of condition, as they shall from time to time accrue, each affording a distinct ground of claim from the other; and that is all.

It was insinuated in argument, feebly to be sure, that the foregoing considerations might not be applicable to this case, because the new administrator had not been appointed when the original suit upon the probate bond was commenced. But he was appointed during the pendency of that action, and in time to enable him to demand these moneys of *Pinney*, whose refusal to pay them over upon this demand, was assigned as a distinct ground of recovery by the plaintiff, in his replication to the defendant's plea, setting out the breaches of condition; which was equivalent to a new declaration, demanding this money. It is now altogether too late, as well as ungracious, to make this objection, and especially since a recovery in the former action was had upon this very assignment of a breach of condition.

For the reasons suggested, a majority of the court are of opinion, that there is error in the judgment of the superior court; and that the evidence there offered and admitted, was inadmissible.

In this opinion STORRS and HINMAN, Js. concurred.

WILLIAMS, Ch. J.   The facts admitted or found, were, that a suit was brought upon this bond to the *January* term of the court in 1840, and a recovery had for 111 dollars, against *Benjamin Pinney,* defendant, executor of *Mary Allen's* will, and his surety; that *Pinney* now retains in his hands 100 dollars, being the amount of certain legacies, which he neglects to pay, though duly demanded and now due: that on a settlement with the court of probate, he credited himself with the amount of these legacies, and had an order to sell real estate to pay them, which he sold, but still keeps the avails; that after this, in 1839, he was duly removed from his office of executor, and on the 15th of *April* 1840, one *Shepard* was appointed administrator, at which time these legacies were not due; that after his appointment and qualification, and before the trial, *Shepard* made demand of *Pinney* of all the unadministered estate, which he refused to deliver, having then in his hands, as he admits, 111 dollars; and on said trial, one breach assigned was the refusal of *Pinney* to deliver over, on demand, the moneys in his hands, evidence of which was exhibited on the trial; that in fact that said suit was brought for the sole benefit of the residuary legatees, for moneys collected, by said *Pinney,* of *Davis* and others, and on the trial, no evidence was given or claim made for these legacies, nor were the same considered by said court as included in the judgment.   So that it appears, that the executor now has in his hands the money raised by sale of lands for these legacies: and the questions are, whether evidence was admissible to prove the fact that the former suit was brought for the sole benefit of the residuary legatees, and that no claim was made on that trial or considered relative to these legacies; and if this evidence is admissible, whether the facts shown on the record will permit a recovery.

1. As to the evidence.   The facts on this point were put in issue by the parties, and unless they were directly contrary to the record, might be shown.   The record certainly does not show, that this claim was made on that trial: it is only *prima facie* evidence of that fact.   *Snider* v. *Croy,* 2 *Johns. R.* 229.   Whether it ought to have been made, is a distinct question, to be answered in another part of the case. We see not, therefore, why the evidence was not admissible.

2. If the defence is good, it must be, either because this

claim was included in the former recovery; or because evidence was offered in support of it, which was insufficient; or because it ought to have been included in that judgment.

The first alternative is precluded, by the finding of the court below : the claim was not considered by the court. The second alternative is also precluded by that finding, unless it is contrary to the record.

In the third replication the plaintiff avers, that no claim was made and no evidence was offered in relation to the non-payment of these legacies ; which fact is found true by the court.

There is nothing in the record to contradict this, unless that it is averred that *Shepard* made demand of all the estate in the hands of *Pinney,* as alleged in the 8th breach in the former case, and that evidence was given of that fact on the trial.

Now, the evidence was indeed given ; but it was not given with any relation to this claim, but merely in relation to the claim of the residuary legatees, who were then before the court, and who deemed it necessary for their purposes. It seems to me, that if we may go into the circumstances of the trial, the question whether evidence was given in support of this claim, becomes a question of fact ; and unless the record speaks conclusively upon the subject, that fact must be found by the court below, where the question is open. The fact that *Shepard* had made such a demand, was as important, as necessary to the case of those who there pursued their claims, as to these legatees ; and unless the latter are barred by the other acts of these parties, they cannot be affected by this. If it was not done or intended for their use or benefit, but for that of others, they ought not then to be injured by it. If it was evidence common to both claims, it surely ought not injuriously to affect those who have made no use of it.

The plaintiff must prove the execution of the bond, if denied ; but it would not be claimed, that the evidence would prevent the proof in a future case, or affect the rights of these parties in another suit.

I have not alluded to the fact that this demand of *Shepard* was not made until after suit brought, because I prefer to meet the case upon the principal point on which the defence is placed.

The fact then that the claim now presented was not made nor considered in the former suit, seems to me conclusive against the defendant.

*Hartford,*
June, 1845.

Pinney
*v.*
Barnes.

3. But it is said in the defendant's plea, that this claim was, or might have been, settled, in the former action ; and no man shall be allowed to split up his causes of action to vex the defendant.

The general rule upon the subject is well settled, and ought to be preserved inviolate. It is expedient for the republic that there should be an end of strife. But this principle, intended to promote justice, is not to receive such a construction as to defeat the very design of it. In the early cases, this was prevented, by means of a prohibition. *Gurling* v. *Alders*, 2 *Keb.* 617. S. C. 1 *Vent.* 73. *Anon.* 1 *Vent.* 65. And now the effect may be produced, by plea in abatement or bar. But it is not to be extended in such a manner as to work injustice. Thus, in the case of Lord *Bagot* v. *Williams*, 3 *B. & Cres.* 235. (10 *E. C. L.* 62.) the defendant, while steward of the plaintiff, had, between *April* and *November* 1822, received large sums of money for timber sold, and in *December* 1821, 46*l.* for rents. An action for money had and received was brought, and a former recovery pleaded ; on trial of which, it appeared, that judgment had been taken on default, in the former suit for 3400*l.*, being all the agent of the plaintiff thought the defendant could pay, though in *August* 1822, he investigated the accounts, and found due 7000*l.* for timber sold. After the judgment, he found the rents had been received on the second suit. *Garrow*, B. held, that whatever constituted a subsisting debt at the time of said suit, and was known to be so, by the agent who managed the whole transaction, was to be considered as included in it, and as constituting one entire transaction, and directed a verdict for 46*l.* only. On motion for a new trial, this opinion was confirmed. Ch. J. *Abbott* says, it appears the plaintiff's agent was aware, when the suit was commenced, that all sums included in the present action were due to the plaintiff, except the 46*l.*; and being so, must be considered as constituting the cause of action for which judgment was recovered. And *Bayley*, J. says, his agent knew he had claims for all sums now claimed, except 46*l.*; and as he chose to take judgment for that sum, he is bound by his own act.

HARVARD LAW LIBRARY

*Hartford,*
*June, 1845.*

Pinney
*v.*
Barnes.

And in *Young* v. *Munby,* 4 *M. & Sel.* 183. which was a suit for dilapidation of a pew, there having been a former suit for dilapidation of the rectory, Lord *Ellenborough* held, that the plaintiff might maintain this action, as convenience or subsequent discoveries enabled him. And *Le Blanc,* J. says, as to the hardship, the court will always interfere, if they see that the action is brought for oppression sake. In *Avery* v. *Fitch,* 4 *Conn. R.* 365. *Hosmer,* Ch. J. says, a man cannot be suffered to multiply suits unnecessarily.

Is this case within these principles? Now, in the settlement of an estate, the several creditors, heirs and legatees may each have several and distinct claims, and each may bring their several and distinct suits therefor. But as the property out of which these claims are to be satisfied, is to be taken into the custody of the law, the law has wisely provided, that bonds shall be given to its officers for the faithful performance of the trust; and the judge is but a trustee for the respective claimants. It is his duty, therefore, to suffer a suit by the next of kin, or a creditor: it is, says Lord *Mansfield, ex debito justitiæ. Cowp.* 140. And in *Massachusetts,* it is prescribed by statute, that creditors and heirs, whose claims are ascertained, may sue on the bond, without licence from the judge of probate; and others, it has been held, may sue by his permission; but this he may not unreasonably refuse. *Robbins* v. *Haywood,* 16 *Mass. R.* 524. The relations of the parties in interest in the probate bond, are in this state the same as they are in *Massachusetts.* Though no express provision is given here to bring suits on the bond, yet a similar practice has always prevailed. A creditor or legatee, claiming that he has not received a legacy or debt due, applies to the judge of probate, and claims to sue the bond, and offers indemnity for the costs. If he shows probable cause for the suit, as *Parker* Ch. J. says, in the case cited from 16 *Mass. R.* (*p.* 528.) the judge will not impede the course of justice; or if he does, an appeal will lie. The person who brings the suit, has no necessary connexion with any other claimant. The estate is sufficient; but he has not received his due. He takes the necessary steps to secure himself. He does not seek to know, nor does the law impose on him the duty of knowing, whether others are paid. So too as respects the judge, if no one complains, he presumes all is right; and

*Hartford*,
July, 1845.

Pinney
*v.*
Barnes.

since the court have decided, that a receipt in the hands of an executor from a legatee would discharge a claim on the bond for the legacy, though not shown to the judge, it would not be safe for him to institute a suit.    The suit then is carried on for the benefit of those who applied to the judge, perhaps without any knowledge that others have similar claims ; and without others having similar claims, knowing of the existence of the suit.    Will it do then to apply the maxims of the case cited to this case ?    Are these legatees to suffer, because the claimants in the former suit did not know that they had claims ; or because they did not know of this suit ?    Can they be accused of unjustly vexing the defendant ?    The judge of probate is a mere nominal party ; his declarations cannot be given in evidence in the suit.    Surely then, these legatees are no more to be prejudiced, by his omissions, than by his declarations.

Wisely therefore, has the statute provided, that a *scire-facias* may be brought, not only for *further*, but for *other* breaches of the bond ; as if it had said, for any breaches not embraced in the first suit.

Or apply the principle which governed the *English* court in Lord *Bagot* v. *Williams*.    It would then be incumbent on the defendants to show, that the claim of that legatee was known to be an existing claim, when this suit was tried.    So far from that, it appears that *Pinney* had settled his accounts with the court of probate ; had charged this legacy as paid ; and on the strength of it, procured an order to sell lands ; after which, these residuary legatees, finding some property had come into his hands since that settlement, bring the suit, and recover that sum, and that sum only.    Whose fault, then, is it, that this claim was not presented in that suit ?    Not the residuary legatees ; for they asked for nothing but what was due beyond the debts and particular legacies.    Not the judge of probate ; for he did not know but the legacies were paid, by the men who had received, on his order, the money for that very purpose.    Not the new administrator ; for this suit was brought, before he came into that place, and was tried, for aught that appears, without his knowledge or approbation.

The defendant, the executor, now admits these legacies are not paid, unless by that judgment ; and it is expressly found, they were not included in that.    Shall he then be allowed to

HARTFORD LAW LIBRARY

*Hartford,*
*July, 1845.*

Pinney
*v.*
Barnes.

shelter himself under the rule that the plaintiff shall not be allowed to recover in a second suit, when he ought to have exhibited his claim in the first? Shall he then use as a sword, what was intended as a shield? Are the persons for whom this suit is brought, violating a salutary principle of law, in unfairly prosecuting this claim; or are the rights of persons, then infants, to be at the mercy of others, having no common interest with them? I think the principle of the cases cited requires no such harsh extension. If the court ever looks to see who are the real plaintiffs in a cause, it seems to me there is no case that demands it more than this. And it seems to me, that another answer may be given to the defence of a former suit.

It is insisted, that it is averred and is proved, that *Pinney* was removed from his office as executor, and that the administrator made demand of all the property in his hands, belonging to said estate, or to which said *Shepard* was entitled, and a recovery was had on that precise issue. But if this property was such as the administrator could not demand, then he could not recover on account of its non-delivery, as that was the ground upon which it was claimed.

The statute de "Estates," *sect.* 23d, enacts, that such administrators shall demand "all the goods and effects of the deceased, and all books of accounts, bonds, notes or other securities, documents or papers, that concern the estate, or may be wanted in the settlement of it." It cannot be claimed, that the property in dispute falls within the latter description. The only question is, whether it is "goods or effects of the deceased."

The avails of lands of the deceased sold since his death, can in no sense be said to have been "goods or effects of the deceased," although it arose from the sale of such lands. The lands, as such, were the estate, not the goods or effects of the deceased; and when sold legally, the avails became the legal property of the executor, applicable to the object for which the land was sold. But as the power of acquiring property ceased upon the death of the testator, no change of his property, by his legal representative, could make the property so acquired the goods or effects of the deceased. Property thus acquired was *trust property* in the hands of the executor, whose duty it was faithfully to apply it to the

*Hartford,*
July, 1845.

Pinney
*v.*
Barnes.

specific objects to which it was appropriated. For not ap-
plying it in this manner the executor is liable, but not for the
non-delivery of it to the new administrator. The statute,
which is our guide, does not, like that of *Massachusetts,*
make the proceeds of the sale of real estate assets in the
hands of the executor, and say he shall be accountable for
them, as such; (*Rev. Stat.* 429.) but only makes him ac-
countable to the administrator for *goods and effects of the
deceased.*

If it be said, this is giving a narrow construction and con-
trary to its spirit, the answer is, it is giving the words their
ordinary meaning, and there is no occasion for giving them
an enlarged construction, as the executor is accountable in an-
other form, being liable for not applying the money accord-
ing to the order of the court of probate. Were it other-
wise, however, it would be a strained construction to say,
that this money was ever the goods or effects of the deceased.

If it be said, that although the moneys could not have been
recovered in the former suit, upon the issues found, yet the suit
is a bar, because the pleadings ought so to have been framed
as to embrace this claim, or a recovery might have been had
upon the default; then the question arises, whether the rights
of different persons, having distinct interests, can be regarded
in suits of this character. On that point, in addition to what
has been said, I would ask whether, if a suit upon such a
bond was brought avowedly for the use of *A,* a creditor
whose debt was unpaid, a judgment would be a bar to *B,*
another creditor having no interest in or knowledge of *A,*
and his claim, because *B's* claim might have been embraced
in that suit? Or take another case: a suit is brought in the
name of the treasurer upon a sheriff's bond, for moneys of *A,*
collected and not paid over; would a recovery be any bar to
a similar claim of *B,* which was due and might have been
included in the suit upon the bond? And yet no statute pro-
vision, as is the case in *New-York,* is here made. There is,
it seems to me, no way to do justice upon such bonds, but to
look through the veil which hides the real parties, as has al-
ready been done, when the court said the plaintiff's admis-
sions were not evidence.

4. But it is said no sufficient breach is assigned. This can-
not apply to the declaration; for it is not claimed, that there

HARVARD LAW LIBRARY

*Hartford,*
*July, 1845.*

Pinney
*v.*
Barnes.

is not there a sufficient breach assigned. But it must come to this, that upon the whole record it appears the plaintiff ought not to recover. If then the plaintiff has assigned a sufficient breach, the enquiry is, is that sufficiently answered? The defendant does not deny that he has received the moneys from the lands sold to pay said legacies, and admits he has not paid them to the legatees, but says, before they were of age to receive them, he was removed, and another person was appointed to act as executor, and so he had no power to act ; and that before the trial of the first action, the administrator made demand of him of all the goods of the estate in his hands, which he refused to deliver ; whereupon a suit was brought and a recovery had, and the same has been paid. But it is found, that the money in his hands was not sought or recovered, in that action ; so that the question is, whether the fact that a new administrator has been appointed and qualified, who has demanded this money, is sufficient to justify the defendant in withholding it. It may be said, it is sufficient for him to prevent him from doing any act as executor ; his powers ceased ; no duty was left but to pay over to the administrator. Now, if he had paid to the administrator, I am not about to say, that it would not have been a discharge ; but shall his refusal to pay to the heirs and to the legatees, be a discharge ? It is true, the plaintiff has assigned as a breach the refusal to pay to the legatees, which payment, according to the case of *Blackstone* v. *Hills,* would surely have been justifiable. But then it appears by his own showing, that he also refused to pay the new administrator ; and is this judgment to be reversed, because that fact is shown by the defendant himself instead of the plaintiff?

And now, when the court are called upon under our statute to render judgment for what may be due in equity on the bond, shall these persons, for whom the administrators are mere trustees, who come themselves and claim their dues, be sent back to make an allegation, which the defendant himself has made, to entitle them to recover? It seems to me, when it appears to the court, that the defendant has sold lands to raise this money to pay these legacies, and retains it in his hands after being claimed by the legatees, and after demand by the administrator admitted by him, that the court must see that there is a breach of this bond, for which a court of

equity will grant relief.  A change of administration may justify the defendant in paying the money to the new administrator, but can be no justification for retaining it in his own hands.

WAITE, J. was of the same opinion.

Judgment reversed.