BEALL *v.* NEW MEXICO.

1. A statute authorizing judgment against the sureties of an appeal bond, as well as against the appellants, in case of affirmance, is not unconstitutional.

2. A Territorial legislature, having by its organic act power over all rightful subjects of legislation, is competent to pass such an act.

3. An administrator *de bonis non* cannot sue the former administrator or his representatives for a devastavit, or for delinquencies in office; nor can he maintain an action on the former administrator's bond for such cause. The former administrator, or his representatives, are liable directly to creditors and next of kin. The administrator *de bonis non* has to do only with the goods of the intestate unadministered. If any such remain in the hands of the discharged administrator or his representatives, in specie, he may sue for them either directly or on the bond.

4. Regularly, a decree of the probate court against the administrator for an amount due, and an order for leave to prosecute his bond, are prerequisites to the maintenance of a suit thereon.

ERROR to the Supreme Court of the Territory of New Mexico; the case being thus:

One Hinckley died at Santa Fé, in the Territory of New Mexico, in October, 1866. At the time of his death he was a member of a mercantile copartnership, consisting of himself and two persons named Blake and Wardwell, and they carried on business at Fort Craig and other places in the Territory of New Mexico.

In November, 1866, one Beall was appointed "administrator and executor of the estate of Hinckley, according to the last will of the deceased," and upon such appointment gave a bond with himself as principal and one Staab and others as sureties, conditioned in the ordinary form:

"To account for, pay, and turn over all the moneys and property of the said estate to the legal heirs of the said deceased,

and to execute the last testamentary will of the said deceased, and to do all other things relative to the said administration as required by law, or by the order of the Probate Court of the county of Santa Fé, or any other court having jurisdiction in the matter."

In pursuance of his appointment, Beall filed in the probate court an inventory of the assets of the estate, in which, among other things, he said:

"The property, rights, and credits of the said deceased, so far as the undersigned, executor, has been able to obtain a knowledge thereof, were, at the time of his decease, as follows:

"The firm or partnership of which the deceased was a member with Blake and Wardwell, were owing the said deceased the sum of $46,538.60. The undersigned being satisfied that the sum stated is correct, has agreed to receive of the said Blake and Wardwell, in full discharge of the capital and profits of the said deceased, the aforesaid sum. The said Blake and Wardwell have agreed to pay the said sum as soon as they can arrange their affairs to do so, and within a reasonable time. The undersigned is satisfied that the said arrangement is the best he could make for the interest of the estate, and that the payment will be made in due time."

He subsequently ($5000 of the sum having in the meantime been paid), rendered an account to the court of probate, in which he charged himself with a balance due from Wardwell and Blake, in this manner:

"April 30th, 1868, to amount due from Wardwell and Blake, $41,556 25."

In January, 1869, Beall, who was an officer of the army and expected to be ordered away from New Mexico, resigned his office of administrator, leaving the amount due from Blake and Wardwell unpaid: and in October, 1869, one Griffin was appointed administrator *de bonis non* to succeed him. Directly after this, that is to say, in November, 1869, a suit by the Territory of New Mexico, on the relation of this Griffin, was brought in the District Court for the county of Santa Fé, against Beall as principal and Staab and the others, his sureties, upon the administration bond which he and they had given on his appointment.

The breaches of the bond assigned in the declaration were, in substance, that Hinckley's interest in the copartnership referred to, at the time of his death, was worth $60,000; that the effects of the firm consisted of merchandise, real estate, mines, and credits; and that Beall unlawfully and by verbal agreement disposed of the same for $46,500 to Wardwell and Blake, the surviving partners, thereby allowing the interest of the deceased to remain in their possession, and by them (and Beall) to be converted to their own use, and that he neglected to pay over and account for the same; also, generally, that through his want of attention and neglect assets of the estate to the amount of $60,000 were wholly lost, wasted, and dissipated.

The case having come on to be tried before a jury, Griffin, the administrator *de bonis non*, was examined as a witness for his own side of the case. He said:

*On examination in chief—*

" I had frequent conversations with Beall. I asked him why he had not taken some security; I told him I thought it was not safe; asked him if he had any note for the amount; he said he had not; all he had was in the inventory; *when he sold the property*, he supposed they would pay for it. After my appointment Beall delivered to me a paper [produced], purporting to be an abstract from the books of Hinckley, Blake, and Wardwell, showing the condition of the account of Hinckley with the firm, and said it was a true statement."

[The paper, which was a debit and credit account containing many items on both sides and ending in a balance of $46,538.60, was read to the jury.]

*On cross-examination*, the witness, being asked by the defendant's counsel if Beall had ever told him that he had *sold* Hinckley's interest to Blake and Wardwell, answered:

" I don't recollect that *he ever told me so; I inferred so* from Beall's conversations, who treated it as a sale."

The judge charged the jury as follows:

" On the part of the plaintiff it is contended that Beall, as administrator of Hinckley, deceased, sold the interest of Hinck-

ley's estate in the property and effects of Hinckley, Blake, and
Wardwell to Blake and Wardwell, the surviving partners of the
firm, for the sum of $46,538.60, on credit, without taking any
security for the same. In the opinion of the court, the state-
ments of the inventory filed by Beall in the probate court, which
are evidence in the cause, and the evidence of Elkins, establishes
the fact of such sale. By selling this property on credit, Beall
becomes personally liable in law to the estate for the amount
for which the property was sold; and if the jury, from the evi-
dence, arrive at the same conclusion with the court, they should
find for the plaintiff, and assess his damages at $41,556, with
interest at 6 per cent., such interest to commence six months
after the inventory was filed, January 10th, 1867."

Under this charge the jury rendered a verdict in favor of
the plaintiff, and assessed the damages at $48,000, upon
which verdict judgment was entered. An appeal was taken
to the Supreme Court of the Territory. An appeal bond
was given, conditioned that the appellants should perform
the judgment of the court, and pay the damages and costs
that might be adjudged against them upon their said appeal.

There is a provision in the *Revised Statutes of New Mexico** 
which reads as follows:

" In case of appeal in civil suits, if the judgment by the appel-
late court be against the appellant, it shall be rendered against
him and his securities on the appeal bond."

The 7th section of the organic act of the Territory,† pro-
vides—

" That the legislative power of the Territory shall extend to
all rightful subjects of legislation consistent with the Constitu-
tion of the United States and the provisions of this act. . . .
All the laws passed by the Legislative Assembly and governor
shall be submitted to the Congress of the United States, and *if
disapproved* shall be null and of no effect."

There was no evidence that this law had ever been disap-
proved.

In pursuance of it, when the judgment was affirmed by

---

* Section 5, page 290.                    † Brightly's Digest; p. 694.

the Supreme Court of the Territory, judgment was rendered against the appellants and the sureties upon the appeal bond.

The latter judgment was brought to this court by writ of error; the court being called upon to review as well certain errors which were alleged to affect the action itself, as others which were assigned upon a bill of exceptions taken at the trial of the cause.

The errors assigned were—

1st. That judgment was entered by the Supreme Court against the sureties of the appeal bond as well as against the appellants below.

2d. That an administrator *de bonis non* cannot maintain suit on the original administrator's bond.

3d. Other objections, as that the late administrator, Beall, had not been called to account in the probate court, and no decree had been passed against him, and that no order of the probate court was obtained for leave to prosecute the bond.

*Mr. W. M. Evarts, for the plaintiff in error; Messrs. W. W. McFarland and L. P. Poland, contra.*

Mr. Justice BRADLEY delivered the opinion of the court.

The first error assigned is, that judgment was entered by the Supreme Court against the sureties of the appeal bond as well as against the appellants below. This point depends on the question whether the statute of the Territory authorizing such a judgment is a valid one or not. As the legislative power of the Territory, by the organic act, extends to all rightful subjects of legislation consistent with the Constitution of the United States, it would seem to extend to such a case as this. A party who enters his name as surety on an appeal bond does it with a full knowledge of the responsibilities incurred. In view of the law relating to the subject it is equivalent to a consent that judgment shall be entered up against him if the appellant fails to sustain his appeal. If judgment may thus be entered on a recognizance, and against stipulators in admiralty, we see no reason in the nature of things, or in the provisions of the Constitution,

why this effect should not be given to appeal bonds in other actions, if the legislature deems it expedient. No fundamental constitutional principle is involved; no fact is to be ascertained for the purpose of rendering the sureties liable, which is not apparent in the record itself; no object (except mere delay) can be subserved by compelling the appellees to bring a separate action on the appeal bond.

The next point made is a more serious one, to wit, that an administrator *de bonis non* cannot maintain suit on the original administrator's bond. It is true the action is brought in the name of the Territory of New Mexico, to which the bond was given, and is so far correct; but it is expressly brought " for the use and benefit of William W. Griffin, administrator *de bonis non*," and the whole frame of the petition is conceived on the theory that the duty of Beall to respond for defaults and devastavits in administration is owed to the administrator *de bonis non*. This does not seem to be the law as understood in England or in the States which derive their principles of jurisprudence from England, although in some States statutes have been passed making it the duty of an administrator who has been displaced, or of the representatives of one who has deceased, to account to the administrator *de bonis non*.* By the English law, as administered in the ecclesiastical courts, the administrator who is displaced, or the representatives of a deceased administrator or executor intestate, are required to account directly to the persons beneficially interested in the estate, distributees, next of kin, or creditors; and the accounting may be made or enforced in the probate court, which is the proper court to supervise the conduct of administrators and executors.†

---

* Williams on Executors, 443, note (1); do., 783, note (1), 4th American edition; Wernick's Administrator *v.* McMurdo, 5 Randolph, 51; Hagthorp *v.* Hook, 1 Gill & Johnson, 270; Bank of Pen. *v.* Haldeman, 1 Penrose & Watts, 161; Kendall *v.* Lee, 2 Id. 482; Drenklo *v.* Sharman, 9 Watts, 485; Weld *v.* McClure, Ib. 495; Small's Estate, 5 Barr, 258; Carter *v.* Trueman, 7 Id. 320; Adams *v.* Johnson, 7 Blackford, 529; 2 Redfield's Law of Wills, 91 and note.

† Ib.

To the administrator *de bonis non* is committed only the administration of the goods, chattels, and credits of the deceased which have not been administered.  He is entitled to all the goods and personal estate which remain in specie. Money received by the former executor or administrator, in his character as such, and kept by itself, will be so regarded; but, if mixed with the administrator's own money it is considered as converted, or, technically speaking, "administered."  And all assets of the testator or intestate in the hands of third persons at the death of an administrator or executor intestate belong to the administrator *de bonis non.**  Of course debts and choses in action not reduced to possession belong to this category.  In this case the claim of Hinckley's estate against his surviving partners is of this character.  If anything can be realized therefrom by the prosecution of those partners, it is the duty of the administrator *de bonis non* to prosecute them, as much as it was his predecessor's duty to do so, before his discharge.  But, for the delinquency of the former administrator in not prosecuting, he is responsible to the creditors, legatees, and distributees directly, and not to the administrator *de bonis non.*  This is the result of the authorities referred to.  And it follows that, as the administrator *de bonis non* has no claim against the former administrator on this ground, he cannot prosecute for it on the administration bond.  It is said in Williams on Executors (referring to 1 Haggard's Ecclesiastical Reports, 139), that "if the original administrator be dead, and administration *de bonis non* has been obtained, such administrator may sue the executors of the deceased administrator at law on the administration bond, in the name of the ordinary; and the court will order the bond 'to be attended with,' in the common-law court, and produced at the hearing of the cause."†  The authority referred to was the case of "*The Goods of Hall,*" in which the first administrator died without having distributed the assets in

---

\* 1 Williams on Executors, 781, 4th American edition.

† Vol. i, p. 444, 4th American edition; p. 514, 6th English edition.

his hands, and leaving a considerable balance of the estate in the hands of his bankers. The administrator *de bonis non* having applied to the executors of the deceased administrator for his balance, and payment being refused, he commenced the action on the former administrator's bond, and the prerogative court sanctioned the proceeding. But this case was undoubtedly founded on the theory that the money in bank was a part of the original intestate's estate in specie, and, as such, that the administrator *de bonis non* was entitled to it. If specific effects of the estate remain in the hands of a discharged administrator or executor, or in the hands of his representatives, of course, the administrator *de bonis non* is entitled to receive them. And, if they are refused, he will be the proper person to institute suit on the bond to recover the amount. But this is perfectly consistent with the doctrine above expressed, that for delinquencies and devastavits he cannot sue his predecessor or his predecessor's representatives, either directly or on their administration bond.

We have been unable to find anything in the local laws or statutes of New Mexico establishing a different rule on this subject from that which prevails in States governed by the common law. The judgment must, therefore, be reversed for this ground alone, without reference to other errors assigned.

Other objections to the validity of the action are raised—as that the late administrator, Beall, has not been called to account in the probate court, and no decree has been passed against him, and that no order of the probate court was obtained for leave to prosecute the bond. Many authorities show that these preliminaries are necessary to sustain the action. They will be found generally collected in the text and notes of Williams on Executors, p. i, book v, c. iv, pp. 444–448, 4th American edition. Chief Justice Redfield says : " The ordinary bond for faithful administration is not intended to transfer the jurisdiction of questions connected with such administration from the appropriate and exclusive

sphere of the probate courts to that of the common-law. courts. But these bonds are designed to secure the enforcement of the decrees of the probate court,.after they are rendered against the executor or administrator, whereby his breach of duty is established in the proper forum."* The bond is taken by the probate court, and is subject to its control, and the money which may be recovered thereon is ordinarily to be paid into said court for distribution as assets of the estate,.unless recovered to satisfy a particular judgment or decree.† These considerations seem to demonstrate the propriety of requiring the order of the probate court for prosecuting the bond.

Were not these considerations amply sufficient to decide the case, we should still be of opinion that the view taken by the court below on the trial, as to the nature and consequences of Beall's settlement with Hinckley's surviving partners, was very questionable, and calculated to mislead the jury. Beall's account of this settlement, as contained in his inventory of the estate filed soon after the testator's death, was as follows:

" The property, rights, and credits of the said deceased, so far as the undersigned, executor, has been able to obtain a knowledge thereof, were, at the time of his decease, as follows:

· " The firm or partnership of which he was a member with Blake and Wardwell, at Fort Craig and other places in this Territory, were owing the said deceased the sum of $46,538.60. The undersigned, being satisfied that the sum stated is correct, has agreed to receive of the said Blake and Wardwell, in full discharge of the capital and profits of the said deceased, the aforesaid sum. The said Blake and Wardwell have agreed to pay the said sum as soon as they can arrange their affairs to do so, and within a reasonable time. The undersigned is satisfied that the said arrange-

---

* 2 Redfield's Law of Wills, 92.

† See 1 Williams on Executors, 446, 4th American edition.

ment is the best he could make for the interest of the estate, and that the payment will be made in due time."

The judge on the trial seemed to treat this statement as a clear admission of a sale; whereas in our judgment it was equally consistent with a mere liquidation of accounts; and the witness, Elkins, who was called to testify as to Beall's conversations, was obliged to admit that Beall had never told him that it was a sale, but that he, the witness, only inferred that it was such. The testimony of this witness, and the inventory and accounts of the executor being all the material evidence on the subject, ought to have been left to the jury, as well as the evidence relating to the executor's negligence.

Regarding the transaction as clearly a sale, the judge instructed the jury that the administrator had rendered himself liable for the whole claim by not taking security for its payment; whereas, if it was merely a liquidation of the accounts he would only be liable for negligence (if under the circumstances of the case he was guilty of negligence) in enforcing the claims of the estate against the surviving partners.

However, the errors which lie at the foundation of the action preclude further trial, and require that the judgment should be unconditionally REVERSED, with directions to

DISMISS THE PETITION.