JAMES F. CHAMBERLIN, EXECUTOR, APPEAL FROM PROBATE.

Third Judicial District, Hartford, January Term, 1898.   ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

At common law, as a general rule, the goods, chattels and credits of a deceased person were regarded as fully administered, so far as an administrator *de bonis non* was concerned, when they had been changed, altered, converted, or otherwise disposed of by the executor or administrator.   This rule has been modified to some extent

by statute in this State, and under our law administration is not necessarily regarded as complete until the assets of the estate have been turned over to those who are rightfully entitled to them.

Accordingly, if it appears that property which has been disposed of as testate estate is really intestate, it becomes the duty of the executor or administrator if living and capable, otherwise of an administrator *de bonis non* to be appointed for that purpose, to recover, hold and administer such estate in the orderly and prescribed way.

Although the Court of Probate has no power to determine directly and conclusively the construction to be given to a will, yet where an application for the appointment of an administrator *de bonis non* is based upon the claim that a clause of the will is void and the property therein attempted to be disposed of is intestate estate, such court may construe the will for the purpose of determining whether this claim is reasonable and made in good faith, or is without any foundation in law or fact, in order to determine whether such appointment should or should not be made.

[Argued January 4th—decided March 2d, 1898.]

APPEALS from orders and decrees of the Court of Probate for the district of Ellington, refusing to appoint an administrator *de bonis non* upon the estates of Elijah S. Chapman and of Eunice Chapman, deceased, taken to the Superior Court in Tolland County and tried as one case to the court, *Prentice, J.;* facts found and judgment rendered in each case in favor of the appellant, and appeal by the original appellees for alleged errors in the rulings of the court. *No error.*

The material facts are as follows: In March, 1879, Elijah S. Chapman died, leaving a will which was in the same month duly approved. The following is a copy of its material parts: " *Second:* I give, devise and bequeath unto my beloved wife, Eunice Chapman, the use and improvement, rents, profits and income of all my estate, real and personal, and wheresoever the same may be situated, to her during her natural life. *Third:* I give, devise and bequeath all my said estate, at the decease of my said wife, unto such person or persons, and in such shares or portions, as my said wife, Eunice Chapman, by her last will and testament, duly executed shall name, designate and appoint (provided she shall not give the same to Otis and Ambrose D. Snow, or either of them); to them and their heirs forever."

Gelon W. West, Esqr., who was named as executor in the will, accepted said office and duly qualified as executor. In February, 1880, said executor filed an account purporting to be a final account of his administration of the estate, which account after due notice and hearing was approved and allowed.

In April, 1884, Eunice Chapman, widow of Elijah S. Chapman, died, leaving a will which was duly proved and approved, the material parts of which are the following: " *Third:* Whereas, my late husband, Elijah S. Chapman, did, by his last will and testament dated the 8th day of August, 1877, and admitted to probate in the probate court for the district of Ellington on the 22d day of March, A. D. 1879, give, devise and bequeath all 'his estate, at my decease, unto such person or persons, and in such shares or portions as I, by my last will and testament shall name, designate and appoint,' therefore I, the said Eunice Chapman, do give, devise and bequeath all said estate of my said husband, Elijah S. Chapman, and also all the rest and residue of my own estate not hereinbefore disposed of, unto Gelon W. West, of said town of Vernon, his heirs and assigns forever, and do hereby name, designate and appoint the said West as the person to receive all the estate of said Elijah S. Chapman, deceased, according to the provisions of said will of said Elijah S. Chapman, all of which said estate of said Elijah S., and said residue of my own estate, shall be to said West, his heirs and assigns, in trust for the uses and purposes following, to wit: To have the sole care and management of all said property, real and personal, and to pay over and deliver to my son, Doremus D. Chapman, during his natural life, all the rents, profits, interest and income of said trust estate, after deducting the expenses, incident to said trust, for the use and benefit of my said son; and if said rents, profits, interest and income shall, at any time, be insufficient to provide my said son with a good and comfortable support in sickness and in health, then and in that case I fully authorize and empower said trustee to use and expend so much of the principal of said trust estate as shall be necessary for

that purpose, in his discretion. And I fully authorize and empower, and direct said trustee, when in his judgment it shall be for the interest of said estate, to sell and convey any portion or all of said trust estate, real and personal, and to invest and reinvest the same in such manner as he shall deem best for the interest of said estate, and in like manner to invest and reinvest all moneys belonging to said estate. *Fourth :* If, upon the decease of my said son, Doremus D. Chapman, any portion of said trust estate shall be remaining in the hands of said trustee, undisposed of, I authorize and direct said trustee to distribute, transfer and convey all said remaining estate, absolutely to such persons as would then be entitled to the same as heirs-at-law of the said Doremus D. Chapman, if said estate belonged to him, under the statute laws of the State of Connecticut then in force, if the same were intestate estate, that is to say : said trustee shall distribute said estate as aforesaid, to those persons who are the natural heirs-at-law of my said son at the time of his decease."

In the will of Eunice, Gelon W. West was named as executor as well as trustee, and he accepted said office and said trust and duly qualified both as executor and trustee.

In November, 1889, West filed an account of his administration of the estate of Eunice, as executor, and also as trustee under her will. These two accounts are the only ones ever filed by West in any capacity in connection with the estate of Eunice ; and after due notice and hearing they were approved and allowed by the court. Both accounts showed a balance of $15,885.88 belonging to the trust fund, which consisted of both real and personal estate.

In November, 1889, George M. Paulk received from West said trust fund created by the will of Eunice, and has ever since continued to manage said fund and to act as the trustee thereof, under the provisions of said will, and now has said fund in his hands.

There is no record in the proper Court of Probate of the resignation of West as executor of Eunice, nor as trustee under her will, nor of the substitution of Paulk for West in

any capacity connected with said will, estate, or fund, except what is contained in said records in a certain bond executed by Paulk on the 23d of November, 1889, reciting that he had been appointed executor and trustee on the 18th of November, 1889, in place of West resigned. In fact Paulk was never appointed other than as trustee of said fund, and has never claimed or assumed to act otherwise than as trustee. West died in January, 1890.

Elijah and Eunice Chapman left surviving them three children, to wit: Adeline L., now the wife of Ambrose Snow, Mary E., now the wife of Otis Snow, and Doremus D. Chapman, who was unmarried at the death of his mother. After his mother died Doremus married, and in December, 1896 died, leaving a widow, Ella H. Chapman, but no issue. He left a will which has been duly approved, by which he gave all of his property and estate of every kind to his wife, and appointed James F. Chamberlin as his executor, who has duly qualified and is now acting as such executor. No administrator *de bonis non* has ever been appointed, either upon the estate of Elijah or Eunice Chapman, and no executor or administrator upon either of their estates has ever been appointed except as before stated.

There is now in the hands of Paulk, acting as trustee as aforesaid, after deducting all rents, profits, interest and income during the life of Doremus, and all expenses incident to said trust, certain real and personal property originally belonging to Elijah S. Chapman, which came into the hands of the trustee of Eunice under her will, and certain real and personal property originally belonging to Eunice which came into the hands of West, her executor and trustee.

In March, 1897, the executor of Doremus, claiming that said property in the hands of Paulk was intestate property belonging to the estates of Elijah and Eunice, respectively, which had never been administered, applied to the Court of Probate for the appointment of an administrator *de bonis non* upon each estate, and that court denied the applications. The executor of Doremus took an appeal to the Superior Court, where he made the following claims :—

"1. That the attempted exercise of a power of appointment by said Eunice Chapman in said clause of her will above set forth, was in violation of the statute of perpetuities .which was in force at the time of the death of said Eunice Chapman, in so far as the gift over of the remainder upon the death of Doremus D. Chapman is concerned, and that said appointment is therefore to that extent invalid, and the attempted disposition of such remainder was of no effect in law.    2. That the estate remaining in the hands of said acting trustee, so derived from the estate of said Elijah S. Chapman, was, by reason of the premises, intestate estate, and must be distributed in accordance with the provisions of the statute law of this State.    3. That in order that the property and estate in the hands of said acting trustee may be distributed among the persons entitled thereto, it was necessary that an administrator *de bonis non* with the will annexed be appointed on said estate."

The claims of the present appellants upon the trial in the Superior Court, were as follows : —

"1. That the issue involved in the appeal from the decree of the Court of Probate refusing to appoint an administrator *de bonis non* with the will annexed on the estate of said Elijah S. Chapman, was whether there was an administrator competent to act, and whether there was any property which had not been administered, belonging to said estate.    2. That inasmuch as the only property in question was property which formerly belonged to the estate of Elijah S. Chapman, and that said estate, as well as the estate of Eunice Chapman, had been settled and final account rendered by the executors thereof, and the property in question delivered to the trustee under the will of Eunice Chapman, the administration upon the estate was complete, and there was no property belonging to it which an administrator *de bonis non* with the will annexed would have any jurisdiction over, if appointed.    3. That an administrator *de bonis non* could not properly be appointed, inasmuch as there was no property belonging to said estate which had not been administered upon by the former executor thereof.    4. That the appoint-

ment of George M. Paulk, as trustee under the will of Eunice Chapman, successor to Gelon W. West, deceased, and also as executor, was in effect an appointment of Paulk as administrator with the will annexed, and there was therefore no vacancy in the office. 5. That neither the will of Elijah S. Chapman nor of Eunice Chapman, nor the construction of any clause in either of those wills, was properly before the court, and that the status of the property, as it might be ascertained by the construction of the wills referred to, could not affect the question at issue, because whoever might be entitled to the property now in the hand of the trustee, after the death of the life tenant, it was nevertheless property which had been fully administered, and the same could not be recovered by an administrator *de bonis non* with the will annexed on the estates of Elijah S. Chapman and Eunice Chapman, if one should be appointed. 6. That the property in question in the hands of the trustee under the will of Eunice Chapman, was within the jurisdiction of the Court of Probate, and within the jurisdiction of a court of equity; and it was competent for any persons who claimed an interest in said property to bring a petition to the Court of Probate, or an action against the trustee, and thus determine their rights to the property, without the intervention of an administrator *de bonis non*. 7. That although neither the will of Elijah S. Chapman nor of Eunice Chapman was properly before the court in this appeal, if the construction of those wills, or either of them, was to be considered by the court, then the appellees are entitled to the property in question, under the will of Eunice Chapman, as the only heirs of Doremus D. Chapman, and that the same was not in violation of the statute of perpetuities."

That court in effect sustained the former and overruled the latter claims, and rendered judgment in favor of the executor.

*Lewis Sperry* and *Charles Phelps,* for the appellants (the original appellees).

It is clear, not only that no further administration is needed, but that the appointment of an administrator *de*

*bonis non* would avail nothing, because, upon the facts as they appear of record, the administrator could have no jurisdiction in the premises. *Alsop* v. *Mather*, 8 Conn. 584; *American Board, etc., Appeal*, 27 id. 344; Schoul. Exrs. & Adm. (2d ed.) § 408; 1 Woerner Amer. Law of Adm. p. 395; 2 id., p. 743; *Beall* v. *New Mexico*, 16 Wall. 540; *United States* v. *Walker*, 109 U. S. 258; *Wilson* v. *Arrick*, 112 id. 83; *Fisk* v. *Norvel*, 9 Tex. 13; *Boyle* v. *Forbes*, ibid. 41; *Murphy* v. *Menard*, 14 id. 62–67; *Finn* v. *Hempstead*, 24 Ark. 117; *Wilcoxon* v. *Reese*, 63 Md. 542; *Catlin* v. *Huestis*, 11 Ohio C. C. 120. The case at bar is much stronger in its detailed facts than any of the cases above cited. The executor in the present case has inventoried the property in question, has settled the estate, has paid the debts and legacies, has delivered the property to the testamentary trustee under order of court, has filed his final account, which has been accepted and allowed; and the title to the property which passed under the will to the executor, has passed from the executor to the testamentary trustee under the provisions of the will and under the order of the Court of Probate. And as an administrator *de bonis non* takes title, not from his predecessor, but from the deceased, it is plain that if an administrator *de bonis non* were appointed in this case, he would take title to nothing and could enforce no claims against anybody. Parties in interest might recover the property from the trustee, in any proper form of action, by establishing their right to the property, but an administrator *de bonis non* could recover nothing if he were appointed, because there is no unadministered estate to which his jurisdiction could attach. This is not an action for the construction of a will. There is nothing uncertain or indefinite regarding the terms of either will. The heirs are now, and have always been, the children of Elijah and Eunice Chapman, and the sisters of Doremus D. Chapman. The property has never been in danger of being carried beyond the line drawn by the statute of perpetuities. No danger other than that of a mere naked possibility ever threatened the property given by the will.

*William Waldo Hyde* and *Joel H. Reed*, for the appellee (the original appellant).

The property in question is intestate estate. The trust attempted to be created by the will of Eunice Chapman was of no effect, so far as the attempted disposition of the property remaining after the death of Doremus D. Chapman is concerned. The so-called trustee, Paulk, is in exactly the same position as any other person would be who was found to hold, without right, property belonging to a deceased person. 1 Jar. Wills, 559; 18 Amer. & Eng. Ency. of Law, 357, and cases cited; Gen. Stats. § 2952. Under this statute it has been held over and over again that any conveyance by devise, bequest or grant, which may by any possibility violate the statute, is void, whether it does so in fact or not. *Jocelyn* v. *Nott*, 44 Conn. 55; *Leake* v. *Watson*, 60 id. 498; *Beers* v. *Narramore*, 61 id. 13; *Belfield* v. *Booth*, 63 id. 299; *Morris* v. *Bolles*, 65 id. 45; *Ketchum* v. *Corse*, ibid. 85; *Johnson* v. *Webber*, ibid. 501. The claims of the other side are based upon three assumptions: 1. That the estates had been finally settled by West, executor. 2. That Paulk had been appointed administrator, as well as trustee. 3. That Paulk was still a trustee as to the remainder of said property in his hands, and therefore could be reached by proceedings in equity. The first assumption is devoid of substance, either in law or fact. As to the second assumption, it is based on the phraseology of the bond, and nothing else. The only other evidence stated in the finding was Paulk's conduct, and the court has found that he never claimed or assumed to act as executor or administrator. From these two things alone the court would be justified in finding that Paulk was never appointed administrator. But the fact is as stated, that there is nothing to show that Paulk was ever legally appointed trustee. The third assumption is based, apparently, on the theory that Paulk is a trustee legally qualified to hold the unexpended balance of said funds. There is no trust; hence there is no trustee. Paulk has no more to do with that fund than any man who happens to hold property of another in his hands at the time of the decease of the

owner.   The title to personal property, on the death of the
owner, vests in his executor or administrator, and the heirs
entitled to distribution have no right of possession until
after distribution made.   *Roorbach* v. *Lord*, 4 Conn. 347;
*Roath* v. *Smith*, 5 id. 133; *Griswold* v. *Bigelow*, 6 id. 258;
1 Sw. Dig. 445; 7 Wms. Pers. Prop. 7.   It does not, as yet,
appear who are the distributees.   The only court which
can determine that question is the Court of Probate.   *Con-*
*necticut, etc., Co.* v. *Security Co.*, 67 Conn. 438; *Smith* v.
*Doe*, 33 Md. 442; *Neal* v. *Charlton*, 52 id. 495; Crosw.
Exrs. § 214.   The case of *Woodhouse* v. *Phelps*, 51 Conn.
521, has no application here.   The court will construe the
will so far as to determine whether or not an administrator
shall be appointed.   *Purdy* v. *Hayt*, 92 N. Y. 446; *In re*
*Moore*, 152 id. 602; *Chesebro* v. *Palmer*, 68 Conn. 207.


TORRANCE, J.   In 1879 Mr. Chapman died, leaving a will
in which he gave the life use of all his property to his wife,
and at her death he gave it to such person or persons as she
by her will should appoint.   In 1880 the executor under this
will rendered his final administration account, which was
accepted and allowed.   In 1884 Eunice, the wife of Mr.
Chapman, died, leaving a will in which she appointed Gelon
W. West as the person to receive all the estate of her hus-
band in her possession at her decease, and also gave to him
the entire residue of her own estate, in trust to pay the rents
and profits of the entire property to her son Doremus during
his life, and at his decease to distribute the trust property
to those persons who should then be his natural heirs at law.
In November, 1889, West, the trustee and executor under
the will of Eunice, filed his accounts as trustee and as exec-
utor, which were duly allowed and accepted.   He then had
in his possession something over fifteen thousand dollars
belonging to the trust fund, consisting of both real and per-
sonal estate.   He resigned his office of trustee, and Mr. Paulk
was appointed his successor in that office.   West died in
1890.   Paulk has acted as trustee, under the will of Eunice,
since his appointment.

In December, 1896, Doremus died, leaving a will in which
he left all his property to his widow. The executor under
that will claimed that the trust property in Paulk's hands
at the death of Doremus, was intestate property belonging
to the estates of Elijah and Eunice, in which he had an
interest, and that an administrator *de bonis non* upon each
estate should be appointed, in order that said claim might be
tried and determined. The Superior Court took the execu-
tor's view of this matter, and the principal question here is
whether it erred in so doing.

The claim that the property in Paulk's hands is intestate
property, is based upon the assumption that the gift over to
the heirs of Doremus, in his mother's will, is void. The
appellants claim, in substance : 1. That even on the assump-
tion that the property in Paulk's hands is intestate estate, it
would not be assets in the hands of an administrator *de bonis
non*, because it has been already fully administered, and con-
sequently such an administrator ought not to be appointed,
for he would have nothing whatever to do. 2. That the
question whether the property is or is not intestate estate,
was not properly before the lower court and could not be
determined by it. 3. That if such question was before it for
determination, it should have held the gift over to be valid
and not void.

The first claim is not tenable. It is based mainly upon
rules of the common law which were never adopted in this
State, or have been changed or modified by statute, or have
little or no application in these cases. At common law " exec-
utors and administrators took the legal title to the goods
and chattels of the deceased; nor were they, before the
statute of distribution, 22d and 23d, Car. II., (1670), bound
to distribute the surplus after the payment of debts. Both
held in *autre droit*, and therefore neither could dispose by
will of the property remaining in *specie ;* both had the power,
while living, of changing, altering and converting the prop-
erty, and whatever was thus altered or converted, became
their own goods and descended, on their deaths, to their own
representative. Such change or conversion of the goods,

was (so far as regards the administrator *de bonis non*), a complete administration, and put them as effectually beyond the reach of his commission, as if they had never belonged to the testator or intestate." *Coleman* v. *McMurdo*, 5 Rand. (Va.) 51, 55; *Potts* v. *Smith*, 3 Rawle (Pa.), 361; *Beall* v. *New Mexico*, 16 Wall. 535; and cases cited in note in 24 Amer. Dec. 379.

A somewhat technical meaning was thus given to the word " administered," so far as regarded the administrator *de bonis non*. As to him, goods, chattels, or credits of the decedent, changed, altered or converted by the executor or administrator, were " administered." The administrator *de bonis non* succeeded only to goods, chattels and credits of the decedent which had not been administered; and goods, chattels and credits " not administered," meant goods, chattels and credits which had been the property of the decedent at his death, and remained in specie, unchanged and unconverted when the administrator *de bonis non* was appointed. Thus money received by the former executor or administrator in his representative capacity, and kept by itself separate from his own money, is regarded as " not administered; " but if mixed and mingled with his own money so that its identity is gone, it is regarded as converted and so " administered," so far as the administrator *de bonis non* is concerned. *Beall* v. *New Mexico, supra*, 535; *Marvel* v. *Babbitt*, 143 Mass. 226. The administrator *de bonis non* was regarded as taking the specific property of the decedent, as his immediate successor, and not as succeeding to a prior executor or administrator; hence there was said to be no privity between them. Suits brought by or against the predecessor could not as a rule be prosecuted by or against his successor, and judgments obtained by or against the predecessor were not available in favor of nor against the successor. *Alsop* v. *Mather*, 8 Conn. 584; *Amer. Board, etc., Appeal*, 27 id. 344.

These rules of the common law have been changed or modified to some extent in many, if not most, of the States, including our own. The rule that an executor or an admin-

istrator was entitled to the surplus of the personal estate after the payment of debts, was never adopted in this State. *Bacon* v. *Fairman*, 6 Conn. 121–129. They are regarded here as mere agents or trustees for those beneficially entitled to the property, as creditors, legatees, heirs or distributees. *Woodhouse* v. *Phelps*, 51 Conn. 521–523; *Robbins* v. *Coffing*, 52 id. 118, 143; *Wilmerding* v. *Russ*, 33 id. 67. And it is now made a crime for any executor or administrator to "wrongfully appropriate and convert to his own use the money, funds, or property" of the estate. General Statutes, § 1579. At the very beginning of this century it was by statute made the duty of an administrator *de bonis non*, "to ask for, demand and receive," of his predecessor, "his heirs . . . or administrators, all the goods and effects of the deceased, and also all the books of account, bonds, notes or other securities, documents or papers whatsoever, touching the estate, which may be needed in the settlement thereof"; and it was further provided that all actions at law or in equity, pending against such predecessor when he went out of office, should survive and might be prosecuted by or against his successor. Revision of 1808, p. 272. These provisions, in substance, have been law ever since, and other changes in the same direction have been made from time to time, as shown by the General Statutes. An executor of an executor is no longer, as at common law, entitled to administer the estate of the first testator; § 553. When a will disposes of only a part of the estate, the executor or administrator with the will annexed is *ex officio* the administrator of the intestate estate; § 564. When an executor or administrator dies before completing or accounting for his trust, his personal representative must settle the account in the Court of Probate, and pay the amount found due to the successor; § 617. Courts of probate, after the removal of an executor or administrator and the appointment of his successor, may enforce the delivery of property held by the former, to the latter, "in the same manner as a court of equity might do"; § 612. Under § 445, an executor or administrator paying money or delivering property pursuant to the order of a Court of Pro-

bate having jurisdiction, is protected from personal liability, even if the order is subsequently set aside ; but the property so delivered or money paid, may be recovered " by the person entitled thereto, from any person receiving or in possession of the same." These, and other statutory changes which it is unnecessary to refer to, have modified the doctrines of the common law with reference to the rights and duties of an administrator *de bonis non.*

Under the changes thus made in our law this court, in *Pinney* v. *Barnes,* 17 Conn. 420, 427, held that money of the estate in the hands of an executor removed from office, " no matter from what source received, nor for whom ultimately destined," belongs to the administrator *de bonis non,* and that he was the proper party to institute proceedings to recover the same against his predecessor in office. In *Mansfield* v. *Lynch,* 59 Conn. 320, it was held that where an executor had paid over money of the estate by mistake to a creditor, the administrator *de bonis non* could sue for and recover from the. creditor the money so paid. In that case the money so paid by the executor wrongfully or mistakenly, was an asset of the estate which had been administered by him, within the technical common law meaning of that word, but this fact was not allowed to defeat the right of the administrator to sue for and recover it.

If, then, the property here in question is intestate estate, and has already been administered within the common law meaning of that term, so that under the rules of that law an administrator *de bonis non* could not claim it nor administer it, still, we think that under our law such an administrator would be entitled to claim and recover and administer it. It does not appear to be wanted to pay debts, but if it be intestate property it is wanted for distribution, and administration is never complete until the assets of the estate have been turned over to those rightfully entitled to them.

But even if the strict rules of the common law are to govern in this matter, we think, on the facts found, that the administrator *de bonis non* would be entitled to recover, hold and administer this property, if intestate. It is found that

the property in Paulk's hands is substantially the same identical property which belonged to Elijah and to Eunice Chapman. It still exists in specie, unchanged and unconverted, so far as appears, in the hands of a third person, who, if it be intestate property, has no legal right to it. Under these circumstances it would, even under the rules of the common law, go to the administrator *de bonis non*. *Beall* v. *New Mexico, supra.*

In either view of this matter, then, if the property is in fact intestate, we think the administrator *de bonis non* of the estates of Elijah and Eunice Chapman, is entitled to recover, hold and administer it as assets of those estates. Indeed he is the only person who can properly do so. *Pinney* v. *Barnes*, 17 Conn. 420.

The appellants say that the distributees of Elijah and Eunice can sue for and recover it and divide it amongst themselves, all the debts having been paid. But who are the distributees? That question must be settled by the Court of Probate, and in order that it may do so, "it is plainly essential that such an estate (an intestate estate) should be pending for settlement in said court, in the orderly and prescribed way." *Conn. Trust, etc., Co.* v. *Security Co.*, 67 Conn. 438, 442. And to secure this essential in the cases at bar, the executor of both estates being dead and no successor ever having been appointed, it is necessary that an administrator *de bonis non* upon each estate should be appointed.

The claim of the appellants, that Paulk was appointed as the successor of West in the administration, and was now administrator, is not borne out by the finding, and need not be further considered.

The other two grounds of error claimed may be considered together. They are, briefly, first, that the court below erred in construing the wills at all; and second, that it erred in holding that the gift over in Eunice's will was void.

The power to determine directly and conclusively the construction to be given to wills, is not committed to the Court of Probate, nor to the Superior Court sitting as an appellate court of probate. Such a power involves the right to try

and finally determine disputed titles to property real and personal, and this is not given to those courts. *Hewitt's Appeal*, 53 Conn. 24; *Mallory's Appeal*, 62 id. 218; *Cone et al. Appeal*, 68 id. 84. But though the Court of Probate cannot directly try and finally determine questions of title to personal property, it has the power to pass upon them incidentally and indirectly and for some specific purpose, whenever such an incidental power is necessary to the exercise of a jurisdiction confessedly conferred upon it. Thus it has been held that, although it is not competent for the Court of Probate to determine directly the amount or validity of creditors' claims, it had power, in the settlement of the administration account, to decide on the validity of the claims of creditors paid by the administrator or executor, so far as respects the allowance of such payments in his account; *Edmond* v. *Canfield*, 8 Conn. 87; and that it had the incidental power to determine who the heirs are, "for the particular purpose of completing the settlement of the estate, and in order that the executor may be protected;" *Davenport* v. *Richards*, 16 Conn. 310, 319. The Court of Probate has the exclusive power to appoint executors and administrators, under conditions prescribed by law; and in determining, in a given case, whether it will exercise that power, it must possess the incidental power to decide, subject to review on appeal, whether the conditions for the exercise of its power to appoint, exist; and this may include, in cases like the present, the power to construe wills for the purpose of deciding whether the claim made under them is made in good faith, and whether it is or is not *prima facie* utterly without any foundation in law or in fact.

In the cases at bar the executor of Doremus claimed before the Court of Probate, that the property in question here was intestate estate, because the gift over in the will of Eunice Chapman was void; that if that were so, part of said property belonged to him as the representative of Doremus; that the executor upon both estates was dead and no one had been appointed in his stead; and that he desired to have an administrator *de bonis non* appointed upon each estate, to the end

that he might properly prosecute his claim. These claims he also made in the Superior Court. It was the province and duty of both courts to look at the wills and to construe them to the extent, and for the purpose, of determining whether the claims were made in good faith, and whether they were or were not utterly without foundation in law or in fact. Further than this they were not bound to go. It was not within the province of either court nor was it its duty, to pass finally upon the validity of the executor's claim that the gift over was void, nor did the Superior Court, we think, attempt to do this. In *Woodhouse* v. *Phelps*, 51 Conn. 521, an administrator *de bonis non* was appointed, though it turned out that there was nothing for him to do; in *State* v. *Smith*, 52 Conn. 557, such an administrator was appointed, although it turned out that there was no property belonging to the estate; in *Conn. Trust, etc., Co.* v. *Security Co.*, 67 Conn. 438, such an administrator was appointed, although it was claimed that the property sought to be recovered through him had never vested in his decedent. In these and cases like them, it is not the duty of the Court of Probate, when asked to appoint an administrator *de bonis non*, to pass upon the legal validity of the claims sought to be made available through such an appointment; *Mallory's Appeal*, 62 Conn. 218; it is enough that the claim is made in good faith and appears to have some foundation in fact or in law.

If the claim of the executor was made in good faith, and did not *prima facie* appear to be utterly without reason or foundation in fact or in law, and if the appointments might avail the executor, then we think that upon the other facts found it was the duty of the Court of Probate to make them.

In this view of the law there is no error apparent on the record.

In this opinion the other judges concurred.