ANNA REILLY, ADMINISTRATRIX, *vs.* THE ANTONIO PEPE COMPANY.

Third Judicial District, Bridgeport, April Term, 1928.

MALTBIE, HAINES, HINMAN, BANKS AND WOLFE, JS.

Argued April 17th—decided November 7th, 1928.

*William A. Bree,* with whom was *H. Frederick Day,* for the appellant (defendant).

*Robert R. Rosan,* for the appellee (plaintiff).

HAINES, J.   Plaintiff's decedent, Thomas J. Reilly, was injured in a collision in New York City on May 1st, 1923, between a trolley car on which he was conductor, and a truck of the defendant company, and died of his injuries some hours afterward.   He was a resident of New York State, while the defendant was a Connecticut corporation.   Letters of administration were taken out in New York by the plaintiff, who is the widow and sole heir of the decedent, May 24th, 1923, and also in Connecticut November 30th, 1923. Action against the defendant was brought in Connecticut December 5th, 1923, the complaint being based upon Chapter 13 of the Consolidated Laws of New York, entitled "An Act relating to Estates of Deceased Persons."   Upon a demurrer sustained the plaintiff amended her complaint and based it upon the General Statutes of Connecticut, § 6137.   A further demurrer was overruled, issues were joined February 4th, 1925, and hearing had resulting in a disagreement of the jury, and on January 25th, 1927, the defendant filed certified copies of a preliminary and final certificate of dissolution of the corporation, together with a motion to erase the case from the docket on the ground that the defendant corporation had been dissolved October 19th, 1923, prior to the institution

of the action, which motion was later denied. During the trial of the case, the presiding judge called the attention of counsel to the opinion of this court in the case of *Commonwealth Fuel Co.* v. *McNeil,* 103 Conn. 390, 130 Atl. 794, which was decided after the original demurrer sustained, and suggested that if the plaintiff had a right of action it would rest upon the laws of the State of New York rather than of the State of Connecticut. The plaintiff was thereupon permitted to file a substitute complaint on October 25th, 1927, when the defendant again demurred and was overruled. The defendant then answered the complaint by general denial and setting up as affirmative defenses, that of contributory negligence, the statute of limitations, and the invalidity of the action of the Court of Probate in this State in granting letters of administration on the ground of lack of jurisdiction. The jury gave a verdict for the plaintiff for $10,000, to which, upon motion, interest from the date of the death of the decedent, $2,690, was added. The defendant moved in arrest of judgment on the ground that the complaint was insufficient in law to warrant the judgment, and this motion was denied.

The first of the numerous assignments of error is the denial of the motion to erase the case from the docket. The recital in the motion being "because said corporation was dissolved on the nineteenth day of October, 1923, prior to the institution of this action."

Passing for the moment the question whether such a recital in a motion to erase was proper, we find from our examination of the certificates of dissolution and the record that letters of administration were taken out by the plaintiff in New York May 24th, 1923, and five days afterward the stockholders voted to dissolve the corporation under the provisions of the General Statutes of this State, §3446 *et seq.;* that six days

thereafter, on June 4th, 1923, the preliminary certificate of dissolution was prepared, and fifteen days after the four-months limitation to creditors required by statute, on October 16th, 1923, they filed the final certificate certifying that they had sold or collected all the assets of the corporation and distributed the same among the stockholders, most of the amount distributed going to Antonio Pepe himself. Service in this action was made upon the defendant in its corporate capacity, and in the same capacity it appeared and pleaded, contested the case on its merits and went to the jury, but failed to obtain a verdict; coming to a second trial three years after the case was brought, it denied, for the first time, its own existence and capacity to act as a corporation; the copy of the certificate of final dissolution thus being filed two years after the pleadings were closed for the first trial, and on the same day the motion to erase was filed.

The action of the four stockholders, who, it appears, were also the directors, in thus beginning dissolution proceedings within five days after the plaintiff had taken out administration in New York, and the expedition attending its completion, justify the inference that it was done with the definite purpose of defeating the plaintiff's claim, and the filing of the motion to erase the case from the docket is clearly designed to consummate that purpose. Whatever the object may have been, the proposition for which the defendant is here contending, amounts to this: that the shareholders of a Connecticut corporation can defeat the claim of a New York creditor and prevent its establishment and collection, by agreeing among themselves to dissolve the corporation and divide its assets if they can conclude the process and obtain the signature of their certificate, by the Secretary of the State, before the creditor can bring suit. It is claimed that

the corporation was legally dissolved under the terms of our statutes, which provide that the directors, upon the vote or assent of the stockholders, shall act as trustees to close up the business of the corporation; shall, within two weeks after such action of the stockholders, send written notice to every known creditor to present his claim, stating where and to whom it is to be presented, and limiting a time not less than four months thereafter when this shall be done. General Statutes, §3447. Claims not presented within the time so limited, and rejected claims not put in suit within the four months after notice of the rejection, shall be barred. General Statutes, §3449.

Our statutes further provide that upon the completion of their duties the directors shall prepare, swear to and file with the Secretary of the State, a certificate in prescribed form stating that they have performed their duties as trustees, and "the secretary shall examine the same, and, if he finds that it conforms to law, shall indorse thereon the word 'Approved,' with his name and official title, and shall thereupon record such certificate in a book kept by him for such purpose. When such certificate has been approved by the secretary, the existence of such corporation shall terminate." General Statutes, §3451. The defendant insists that the approved certificate in the present record conclusively establishes that the defendant corporation is absolutely out of existence and that it follows that the court had no further jurisdiction to hear or determine this case which was brought against it after the date of the dissolution. But other provisions of our statute law show that such dissolution is not necessarily absolute and final for all purposes and in all events. In an early case in this State a similar claim was made to the effect that the result of dissolution proceedings when completed, deprived the corporation

of all its franchises and of every corporate capacity. But this court said the claim "that the winding up of the affairs of a corporation produces practically the death of it, may be conceded; but it is not that absolute and technical dissolution which the law recognizes as extinguishing all its rights and its existence, so that it cannot be sued by a creditor," and that dissolution in any mode save by legislative repeal or judicial decree, does not affect the right of creditors, and that the right to establish and enforce just claims will be deemed to continue in existence. *Pahquioque Bank* v. *Bethel Bank,* 36 Conn. 325, 335, 336. Thus we have seen, the corporation continues by statute, for the benefit of a creditor who brings suit within four months after his claim has been rejected; so too a mortgage creditor or a lienor may enforce his claim against the corporation. General Statutes, §3450. Corporations dissolved by voluntary action, as in this case, "shall continue so far as may be necessary to enable them to prosecute and defend suits by or against them, to close up their affairs, dispose of their property and distribute their assets." General Statutes, §3453. Furthermore, in those jurisdictions where by statute actions survive the death of the tort-feasor, and where it is further provided that corporate existence shall continue after dissolution for the purpose of winding up the corporate affairs, it is the general rule that a corporation is liable after dissolution. This is upon the theory that the dissolution is analogous to civil death. Corpus Juris, Vol. 14A, p. 1159, §3817, and cases.

No further citations are necessary to show that the mere appearance of the final certificates of dissolution upon the record in this case, even if we regard them as properly filed and proven, does not conclusively establish that the court was without jurisdiction or

that this action could not be maintained. *Miller* v. *Newberg Orrel Coal Co.*, 31 W. Va. 836, 8 S. E. 600.

A motion to erase the case from the docket will only be granted when it clearly appears from the record that the court is without jurisdiction; *Paiwich* v. *Krieswalis*, 97 Conn. 123, 115 Atl. 720; *Norton* v. *Shore Line Electric Ry. Co.*, 84 Conn. 24, 32, 78 Atl. 587; *Halliday* v. *Collins Co.*, 73 Conn. 314, 318, 47 Atl. 321; *Cocking* v. *Greenslit*, 71 Conn. 650, 651, 42 Atl. 1000; *Wheeler* v. *New York, N. H. & H. R. Co.*, 70 Conn. 326, 328, 39 Atl. 443; and, like a plea in abatement, such a motion will not be aided by intendment or inference. *New York, N. H. & H. R. Co.* v. *Illy*, 79 Conn. 526, 529, 65 Atl. 965.

We have discussed the motion upon the defendant's assumption that the certificates of dissolution were a proper part of the record. As matter of fact they were not. They were neither properly filed nor proven. It does not appear that they were filed by the authority of the court or by consent of opposing counsel. The fact of dissolution which counsel sought to establish by them was an issuable fact to be determined by the court upon proper pleadings. Such facts cannot be raised by a motion to erase any more than by a demurrer. A motion to erase under our practice serves the same purpose as a demurrer. It admits all well pleaded facts and invokes the existing record and must be decided upon that alone. If sustained it is final and, unlike the demurrer, ends the case. *Norton* v. *Shore Line Electric Ry. Co.*, 84 Conn. 24, 33, 78 Atl. 587; *Bethel & Redding Lime Co.* v. *New York, N. H. & H. R. Co.*, 82 Conn. 135, 142, 72 Atl. 728; *Murphy* v. *Elms Hotel*, 104 Conn. 351, 354, 133 Atl. 106; *Equitable Trust Co.* v. *Plume*, 92 Conn. 649, 652, 103 Atl. 940; *Saunders* v. *Dennison*, 20 Conn. 521, 525; *James* v. *Morgan*, 36 Conn. 348, 351.

The motion to erase was properly denied.

Error is assigned for allowing the amended complaint of October 25th, 1927. The original complaint under the law of New York claimed $25,000 damages, and the complaint in question was identical in terms save that it asked for $10,000 damages only, and after demurrer overruled and issue joined on this complaint, the trial and judgment were had thereon. The parties were thus at the trial in the same position they occupied when the suit was brought. Full opportunity to plead and produce evidence was accorded to and availed of by the defendant. It was well within the discretion of the trial court to permit the plaintiff thus to file this complaint, and clearly not an abuse of discretion. General Statutes, §5664; *La Barre* v. *Waterbury*, 69 Conn. 554, 555, 556, 37 Atl. 1068; *Lawton* v. *Herrick*, 83 Conn. 417, 420, 76 Atl. 986; *Raymond* v. *Bailey*, 98 Conn. 201, 204, 118 Atl. 915; *World Fire & Marine Ins. Co.* v. *Alliance Sandblasting Co.*, 105 Conn. 640, 644, 136 Atl. 681.

This defendant further urges that this complaint was "entirely new" and in effect the statement of a new cause of action. The plaintiff's cause of action was the death of the decedent by the wrongful act of the defendant's employee, and the gist of it at all times was the right to recover compensation for the wrong done. The substitution of the complaint for the one based upon the Connecticut statute, was a legitimate step in the pursuit of that object. *Johnson* v. *Sikes*, 56 Conn. 589, 594, 595; *Fisk's Appeal*, 81 Conn. 433, 441, 71 Atl. 559; *Vickery* v. *New London Northern R. Co.*, 87 Conn. 634, 642, 89 Atl. 277; *Lassiter* v. *Norfolk & C. R. Co.*, 136 N. C. 89, 92, 48 S. E. 642; *Union Pacific Ry. Co.* v. *Wyler*, 158 U. S. 285, 15 Sup. Ct. 877.

The court committed no error in granting the mo-

tion for substitution of the last complaint. When the substitution was made, the complaint related back to the beginning of the action and thus did not violate the statutory limitation. *World Fire & Marine Ins. Co.* v. *Alliance Sandblasting Co., supra; Merwin's Appeal,* 72 Conn. 167, 172, 43 Atl. 1055; *Huntington's Appeal,* 73 Conn. 582, 585, 48 Atl. 766; *Raymond* v. *Bailey,* 98 Conn. 201, 204, 118 Atl. 915.

A third assignment of error is the overruling of the defendant's demurrer to the complaint of October 25th, 1927. The demurrer was based upon several grounds: (1) that the New York statute was contrary to the law of Connecticut in letter and policy, and so could not be enforced in a Connecticut court, (2) that the New York statute is penal, (3) that it gives a new cause of action to certain beneficiaries rather than to the estate of the decedent, (4) because the burden of showing contributory negligence is made a matter of defense and rests upon the defendant. It is a general principle of our law that the plaintiff has the right to enforce in our courts, any legal right of action which he may have, whether it arises under our own law or that of another jurisdiction. *Vanbuskirk* v. *Hartford Fire Ins. Co.,* 14 Conn. 583, 591; *Commonwealth Fuel Co.* v. *McNeil,* 103 Conn. 390, 405, 130 Atl. 794; *Orr* v. *Ahern,* 107 Conn. 174, 175, 139 Atl. 691. See also *Leonard* v. *Columbia Steam Navigation Co.,* 84 N. Y. 48. There are certain recognized exceptions to this general rule. We do not enforce foreign statutes which are penal, or rights arising thereunder. Nor do we enforce the law of another jurisdiction, or the rights arising thereunder, which we conceive to be "injurious to our public rights" or to the "interests of our citizens," nor those which "offend our morals," "contravene our [public] policy" or violate our positive laws.

Clearly these statutes of New York are not injurious

to our public rights; they do not violate our positive laws nor offend our morals. Nor can we see wherein the statutes relied upon are penal. They are not statutes of punishment, but remedial and compensatory in character. The State courts of New York so hold. *Loucks* v. *Standard Oil Co.*, 224 N. Y. 99, 120 N. E. 198.

Further, we fail to see how the interests of our citizens are in any way injured. If it be said that the measure of damages under the New York law permits a larger recovery against a citizen of this State than would be permitted by our own statutes, it must be remembered that by going into the State of New York the defendant put itself under the jurisdiction of that State, acquiring under the laws of that State a right of action for negligent injury done it, and incurring a corresponding liability for negligent acts of its own. It surely cannot be said that our courts should concede a Connecticut citizen the enjoyment of the rights acquired in New York without requiring him to submit to the corresponding obligations, on the theory that the interests of our citizens require it.

It is further strongly urged that the provisions of the New York law are contrary to our public policy, and the dissimilarities in the statute provisions of the two States are pointed out in detail. These do not establish a contravention of our public policy. Dissimilar provisions are to be expected, but even if a foreign law gives a right which ours does not, or bases the right on a different theory of justice, it in no way establishes that we are right and the foreign State wrong. We are not at liberty to refuse the enforcement of the foreign law in order to suit our own view of what is fair and right under the stated circumstances. Our courts "do not close their doors unless help would violate some fundamental principle of jus-

tice, some prevalent conception of good morals, some deep-rooted tradition of the common weal." *Loucks* v. *Standard Oil Co.,* 224 N. Y. 99, 111, 120 N. E. 198.

The New York law, by the provisions in question, grants civil rights to a private person; they do not constitute, in their essential character and effect, a punishment for an offense against the public, and we perceive nothing in its provisions which would justify us in refusing its enforcement. *Huntington* v. *Attrill,* 146 U. S. 657, 683, 13 Sup. Ct. 224.

The fourth assignment is the admission of the letters of administration issued by the Court of Probate in this State.

The New York statute provides as follows: "The executor or administrator duly appointed in this State, or in any other State, territory or district of the United States, or in any foreign country, of a decedent who has left him or her surviving a husband, wife, or next of kin, may maintain an action to recover damages for a wrongful act, neglect or default, by which the decedent's death was caused, against a natural person who, or a corporation which, would have been liable to an action in favor of the decedent by reason thereof if death had not ensued." Consolidated Laws of New York, Vol. 10, p. 375, Chap. 13, §130 and following (Laws of New York, 1920, Vol. 3, Chap. 919, Art. 5).

Our own statute provides that "when a person living out of the State shall die intestate, leaving property within the State, administration may be granted in any district where the estate or some part thereof shall be, to such person as the court shall think fit." General Statutes, §4972.

It has been held under this statute that the term "property" as here used includes not only land and tangible personal property, but a chose in action, and that a thing which is the subject of legal ownership is

property, whether that thing is in the possession of the owner or is in the possession of another with the owner having only a bare right to reduce the thing to possession by means of an action. Sometimes the fact of ownership by the intestate at his death is doubtful and may be difficult to settle. In some cases it is not necessary and may not be proper to undertake to determine the question of actual ownership. There may be no power to try such a question except as it is necessarily incident to the appointment of an administrator, and then its determination is not binding beyond the necessities of the purpose for which it is made. In such cases it is sufficient that the intestate was the apparent owner of the property. *Beach's Appeal*, 76 Conn. 118, 123, 124, 55 Atl. 596; *Hartford & N. H. Ry. Co.* v. *Andrews*, 36 Conn. 213; *Chamberlin's Appeal*, 70 Conn. 363, 39 Atl. 734; *Mack's Appeal*, 71 Conn. 122, 41 Atl. 242.

But it is urged that the amount recoverable upon the death of the decedent does not accrue to his estate and become an asset thereof, subject to the rights of creditors and other claims, but, under the New York statute, belongs to the widow or other heirs. There is much force in this claim. While the right to sue is in the administrator, he does not occupy toward it the ordinary relation of one holding that position, but he is in effect rather a trustee or agent for those beneficially interested. *Hamilton* v. *Erie R. Co.*, 219 N. Y. 343, 350, 114 N. E. 399; *Meekin* v. *Brooklyn Heights R. Co.*, 164 N. Y. 145, 58 N. E. 50; *Stuber* v. *McEntee*, 142 N. Y. 200, 203, 36 N. E. 878; *In re Brennan's Account*, 145 N. Y. Supp. 440; *Mundt* v. *Glokner*, 48 N. Y. Supp. 940.

We do not deem it necessary to decide between these claims. If the Court of Probate was justified in issuing the ancillary letters of administration because

the legal right to sue was in the administratrix, who was thus vested with the apparent ownership, then the admission of the letters was proper. On the other hand, if the present plaintiff be considered merely as the trustee or agent of the parties beneficially interested in the right of action, she is still entitled on the ground of comity to pursue her action in this State, since it does not appear that to permit her to do so would offend the public policy of this State, or injuriously affect the rights of our own citizens. *Iowa & California Land Co.* v. *Hoag,* 132 Cal. 627, 64 Pac. 1073; *Fidelity Insurance T. & S. D. Co.* v. *Nelson,* 30 Wash. 340, 70 Pac. 961; *Toronto General Trust Co.* v. *Chicago, B. & Q. R. Co.,* 123 N. Y. 37, 25 N. E. 198; *In re Waite,* 99 N. Y. 433, 2 N. E. 440; *Peach Orchard Coal Co.* v. *Woodward,* 105 Ky. 790, 49 S. W. 793; *Bradford* v. *King,* 18 R. I. 743, 31 Atl. 166.

It follows that if the court committed error in the admission of the letters of administration, it was harmless to the defendant, because there are allegations and proof sufficient to sustain a recovery on the basis of agency or trusteeship.

These conclusions dispose of the fourth, fifth and sixth assignments of error.

The request to charge, under the seventh assignment, was properly refused. So far as the interest of the motorman in this action is concerned, it was at most a sentimental one. The charge sufficiently protected the interests of the defendant in this respect.

The view which we take of the requirements of proof of defensive matters, disposes of the claim under the eighth assignment.

Failure to charge, complained of under the ninth assignment, is without merit, for the reason that the matter is sufficiently covered by other portions of the charge as given.

The charge requested under the tenth assignment was' properly refused. Under the law of New York which the court was enforcing the existence of contributory negligence was a part of the defendant's case and proof of its absence was not essential, as in this State, to the making of a prima facie case for the plaintiff. Moreover, the defendant recognized this by itself pleading contributory negligence in its answer.

The request involved in the eleventh assignment was the rule for the estimation of damages under the Connecticut law. Since the rights of the plaintiff were measured by the New York law only, this request was properly denied.

The defendant claims error in the failure of the court to charge, as stated in the twelfth assignment, that if the motorman could, by due care, have seen the truck in time to avoid the collision and failed to do so, his negligence would be the proximate cause of the injury. Such negligence of the motorman would not necessarily have been the sole proximate cause. It may have concurred with the negligence of the truck driver. This request was properly denied.

The thirteenth assignment refers to a request to charge relative to the duty of the motorman on the trolley car. Reading the charge as a whole and noting the several references which the court made to this phase of the case, we are satisfied the jury were correctly instructed and that this feature of the case was adequately covered by the charge as made.

Those portions of the charge which are covered by the fourteenth, fifteenth, seventeenth, eighteenth, nineteenth and twentieth assignments, are correct and adequate in the view which we have indicated of the law governing the rights of the parties in this case. The sixteenth assignment is upon the defendant's claim

that the action was barred because not brought within two years of the decedent's death. We hold that the complaint upon which the case was tried relates back to the institution of the suit and hence this request was also properly denied.

The twenty-second, twenty-third and twenty-fifth assignments are not pursued. The twenty-fourth, twenty-sixth and twenty-seventh assignments are based upon the defendant's erroneous theory that the rights of the parties were measured by the laws of Connecticut. The charges were correct under the governing laws of New York State.

A careful study of the entire record satisfies us that the trial court correctly apprehended the legal relations of the parties, and that the issues for the jury were all fairly framed and presented.

There is no error.

In this opinion the other judges concurred.