Hillsborough, }
May 7, 1929. }

MARY L. GHILAIN, *Adm'x, v.* ALPHONSE L. COUTURE & a.

*Sullivan & White, Robert W. Upton* and *Winthrop Wadleigh* (*Mr. Wadleigh* orally), for the plaintiff.

*Warren, Howe & Wilson* (*Mr. Robert P. Bingham* orally), for the defendants.

SNOW, J. This action was brought by the plaintiff as administratrix by appointment in Massachusetts, the domicile of the deceased, against defendants resident in this state, to recover for death from an injury received here.

In claims for death the nature of the right of action, and the party in whom it is invested, are fixed by the *lex loci delicti. Marshall* v. *Railroad*, 81 N. H. 548; 2 Wharton, Confl. Laws (3d *ed.*), 480 *d, note* 7; *Lower* v. *Segal*, 59 N. J. Law 66; 5 R. C. L., Confl. Laws, *s.* 133; 8 R. C. L., Death, 45; Am. L. Inst. Restatement Confl. Laws (Tent.), *ss.* 427, 432. The plaintiff's right of action, if any, is therefore determined by the law of this state. At the time of the accident the sole basis for such a right was P. S., *c.* 191, *ss.* 10–13. *Poff* v. *Company*, 72 N. H. 164. This statute authorized an action to recover damages for death caused by wrongful physical injury to the person, for the benefit of the widow or widower and the children, if any, otherwise for the benefit of the heirs at law of the deceased; said action to be brought at any time within two years after the death of the injured party and not afterwards. Though not expressed in so many words, the statute clearly contemplated that actions to enforce the right should be brought by the "administrator of the deceased party." P. S., *c.* 191, *s.* 12; *Cogswell* v. *Railroad*, 68 N. H. 192, 194. See Laws 1887, *c.* 71, *s.* 1. The interpretation of the quoted words is the principal and the controlling issue presented.

The contentions of the defendants are that the plaintiff, domiciliary administratrix, was not an "administrator of the deceased party" within the meaning of the statute, and that she was, therefore, wholly without authority to bring the suit; that her attempted action was a mere nullity; and that, the limitation having run, the plaintiff's writ is incapable of amendment by substitution of herself as the ancillary administratrix so as to relate back and cure her defective suit.

In support of their contention of the plaintiff's want of authority the defendants cite the general rule that an administrator cannot sue outside of the state of his appointment, and assert that the legislature, acting in the light of the repeated recognition of this rule by our courts (*Sabin* v. *Gilman*, 1 N. H. 193; *Goodall* v. *Marshall*, 11 N. H. 88, 89, 90; *Taylor* v. *Barron*, 35 N. H. 484, 495; *Leonard* v. *Putnam*, 51 N. H. 247, 249; *Luce* v. *Railroad*, 63 N. H. 588, 590) must have intended that only a domestic administrator could bring action under the statute. Reliance upon the rule as a controlling factor in interpreting the legislative intent invites inquiry as to its rationale and scope, for it is unlikely that the legislature gave weight to an abstract

statement of the rule in disregard of the ground upon which it is based and the limits to its application.

While the rule presupposes that an administrator has no claim to recognition *as a matter of right*, beyond the bounds of the state of his appointment (*Goodall* v. *Marshall, supra,* 89; *Luce* v. *Railroad, supra,* 590), such want of *legal right* is not the reason for the rule. The rule does not arise from any want of inherent authority in the court to accord such recognition. *Leonard* v. *Putnam, supra,* 252. See *Lomas* v. *Hilliard,* 60 N. H. 148, 149. No statute or infrangible principle of the common law forbids it. In fact the early usage here was to admit administrators appointed in other jurisdictions, particularly in Massachusetts, to sue in our courts. Smith, 366. Such usage was founded on curtesy which had its origin in the acceptance by the several New England colonies of a recommendation of inter-colonial commissioners that the probate of wills and the appointment of administrators in one colony be given force in the others. *Id.,* 500, 501; *Goodwin* v. *Jones,* 3 Mass. 514; *Stevens* v. *Gaylord,* 11 Mass. 256, 260. The practice was discontinued for want of reciprocity. Smith, 366.

The official character and acts of foreign representatives are being constantly recognized, and rights based thereon enforced by the courts of all the states in numerous situations. An executor or administrator, authorized by the law of the deceased's last domicile, will be recognized as the person to whom ancillary probate will be granted in another state (2 Wharton, Confl. Laws (3d *ed.*), s. 608), and he may appeal from a decree appointing another to such office. *Graves* v. *Tilton,* 63 N. H. 192, 193; *Hutchins* v. *Brown,* 77 N. H. 105, 107; *Smith* v. *Sherman,* 4 Cush. 408; *Shaw's Appeal,* 81 Me. 207; *Miller's Estate,* 92 Iowa 741. A domiciliary administrator, in the absence of ancillary administration, may take possession of and remove the goods or effects of the decedent in another jurisdiction, or collect a debt due from a debtor residing therein, if voluntarily given up or paid, and give a good acquittance and discharge therefor. *Luce* v. *Railroad, supra,* 590 and cases cited; see 42 Harv. Law Rev. 608. A domiciliary administrator appointed in another state may make a valid sale and assignment of stock owned by his decedent in a corporation in this state if voluntarily transferred upon the latter's books and a new certificate issued to the purchaser. *Luce* v. *Railroad, supra,* 591; *Gove* v. *Gove,* 64 N. H. 503, 504. An administrator or executor may recover dividends on stock in a foreign corporation (*Smith* v. *Cuyler,* 78 Ga. 654), and vote at corporation meetings upon

stock standing in the name of his testator or intestate. *In re Cape May &c. Co.*, 51 N. J. Law 78. An executor or administrator of a deceased inventor may sue in the United States circuit court of another state for damages for an infringement of a patent without taking out letters in the latter state. *Connor* v. *Railroad*, 28 R. I. 560, 565. An administrator may sue in a foreign jurisdiction upon any rights which did not form part of the estate of the deceased, but accrued to him after the death. *Wilson* v. *Tootle*, 55 Fed. Rep. 211; 3 Beale, Cases, Confl. Laws, 111 *note*. A receiver appointed by the courts of another state may sue in our courts. *Tompkins* v. *Blakey*, 70 N. H. 584, 587. The courts of each state will give appropriate force to the official character of a guardian or other custodian appointed in another state. *Butler* v. *Butler*, 83 N. H. 413. A foreign guardian may maintain *habeas corpus* to obtain the custody of a minor ward. *Hanrahan* v. *Sears*, 72 N. H. 71, 73. See *Leonard* v. *Putnam*, *supra*, 253.

While the recognition of foreign representatives and the effect given to their official acts in these and other divers situations have been justified and explained upon various considerations consistent with the rule, their very number and variety tend to show that, in a larger sense, the so-called rule that executors and administrators will not ordinarily be granted extra-territorial recognition, and therefore will not generally be permitted to bring actions in the courts of foreign jurisdictions (*Luce* v. *Railroad*, *supra*, 590), is but an exception to the broader doctrine that the acts of foreign representatives or fiduciaries, as a matter of practice, convenience and expediency, will be given effect through the exercise of a liberal comity. See *Butler* v. *Butler*, *supra*. An exception is made whenever such a course would conflict with any principle of public policy. It is in such a conflict with state policy that the denial of the right of action generally to foreign administrators, without first taking out letters here, finds a sufficient, and its only justification. Upon whatever ground the rule calling for such denial may formerly have been thought to rest it is now generally recognized that it is based solely upon the policy of the courts of each state to protect resident creditors of the decedent against the withdrawal into another state of assets on which they may equitably rely for the payment of the debts that may be due them. *Purple* v. *Whithed*, 49 Vt. 187, 189; *Connor* v. *Railroad*, *supra*, 564; *Wilson* v. *Tootle*, *supra*, 213; *Wells* v. *Davis*, 303 Mo. 388, 401, 402. See *Goodall* v. *Marshall*, 11 N. H. 88, 91. "The only possibly good reason for the rule is the protection of possible local

creditors of a decedent." *Pearson* v. *Company*, 286 Fed. Rep. 429, 431. "The underlying reason for it [the rule] is that no state will allow property within its jurisdiction to be so appropriated by a foreign administrator as to destroy the opportunity of its own citizens to enforce their claims against it." *Knight* v. *Railway*, 160 Iowa 160, 163. See Story, Confl. Laws (7th *ed.*), ss. 512, 513.

The damages recoverable under the statute by its terms (*s.* 13) "shall belong and be distributed" to the designated beneficiaries. They are not assets of the estate within the ordinary meaning of the word. *Cogswell* v. *Railroad*, 68 N. H. 192, 194; *Knight* v. *Railway, supra*, 163. They were never any part of the property of the deceased but arose upon his death. The fund recovered is not to be "administered," but after the payment of "the expenses of recovery," is to be "distributed" to the designated persons or classes. It is subject neither to the debts of the deceased nor to the expenses of administration of his estate, nor can the assets of the estate be used to defray the expenses of suit under the statute. *Cogswell* v. *Railroad, supra; Davis* v. *Herbert*, 78 N. H. 179, 180. As no creditor of the deceased can be either benefited or burdened by any action brought under the statute or have "the slightest . . . interest in the recovery sought" (*Pearson* v. *Company, supra*, 431) it is clear that the legislature, in designating the person who shall bring the action, could not have been influenced by a rule which had as its sole justification the protection of local creditors. In interpreting the statute the rule relied upon by the defendants may, therefore, be laid out of the case.

Nor is it perceived that the recognition of a domiciliary administrator as the plaintiff in actions under our death statute offends any state policy so as to require his exclusion under the broader principles of comity. The argument that we would have no assurance that the foreign administrator will distribute the funds he may secure by a verdict according to our law, and that, therefore, it would be unreasonable to so construe the statute that its enforcement would have to be pursued outside our jurisdiction, is without merit. Such a suggestion loses sight of the fact that the relation of the representative to the beneficiaries in respect to the distribution of the fund which may be recovered here bears no analogy to that of the ordinary representative to the creditors and legal recipients in the administration of the assets of the deceased. In the latter case many conflicting principles of state law are involved in the application and distribution of such assets, while in the former case the statute definitely defines the classes of the beneficiaries and upon recovery, leaves no question of

distribution for any court to decide except to fix the identity of the members of the class in case of dispute and to compel an accounting. In these particulars the domiciliary administrator is answerable to the courts of the state of his domicile, where it may safely be assumed the rights of the beneficiaries will be protected. *Robertson* v. *Railway*, 122 Wis. 66; *Butler* v. *Butler*, 83 N. H. 413. To assume otherwise would be "a reproach to the laws" of that state (*Dennick* v. *Railroad*, 103 U. S. 11; *Florida &c. Co.* v. *Sullivan*, 120 Fed. Rep. 799), and in effect saying that it would be impolitic to extend the curtesy of our courts to a Massachusetts representative for fear that the courts of that commonwealth would not hold its own appointee accountable for his special trust according to its definitive terms. The acceptance of such a postulate would be to impugn the mutual confidence possessed by the courts of the respective states in each other so essential to the very existence of the doctrine of comity. Much less will it be considered that such a want of confidence in the courts of other states was a factor in the legislative mind indicative of an intention to use the general words "the administrator of the deceased party" in the restricted sense of the domestic administrator of the deceased. On the contrary, our state policy, as indicated by legislation, has been to enlarge the rights of foreign representatives where it can be done without prejudice to the rights of our own citizens. P. L., *c.* 300, *ss.* 28, 29; *Ib.*, *c.* 305, *s.* 12.

We therefore come to the interpretation of the statute unhampered by any rules or questions of state policy peculiar to the ordinary administration of intestate property to which it has no relation, except as it utilizes the personal representative of the decedent, *ex officio*, as the instrument of enforcement of the right of action which it provides. The right accrues to the "administrator of the deceased party" *eo nomine*, as a trustee merely for the designated beneficiaries. He derives his authority to bring the suit not from his probate appointment but wholly from the statute. In his capacity as administrator of the effects of his intestate he has no more interest in the suit than he has personally.

The statute creates a new cause of action unknown to the common law. *Davis* v. *Herbert*, 78 N. H. 179, 180. The act is designed to correct what, according to modern views, was a manifest defect in the common law, and, notwithstanding it is in derogation thereof, the remedial nature of the act is such as to call for a liberal construction. The paramount object of the legislation is to benefit the designated beneficiaries. The medium of enforcement is secondary.

Conceding that the provision designating the person who shall bring the action is a limitation of the right (*Poff* v. *Company*, 72 N. H. 164, 165), it does not follow therefrom that a strict construction must be applied in determining the person in whom the legislature intended to invest that right. See 31 Harv. Law Rev. 1162.

What then did the legislature mean when it provided that the action should be brought by the "administrator of the deceased party"? The provision it was writing into the laws was not provincial in character. Neither the persons for whose death recovery was provided, nor the beneficiaries for whose benefit the action was to lie, were limited to residents of the state. It must have been in the contemplation of the legislature that, if the rights created were to be effectively enforced, recovery must be sought in the jurisdiction where the defendant, or his property, could be found. It must have understood that the domicile of the deceased and the forum of enforcement, one or both, would frequently, and of necessity, be beyond the bounds of the state. In specifying the person to be invested with the authority of enforcing the rights of the designated beneficiaries the legislature, therefore, selected a class of officials common to all jurisdictions the members of which usually represent deceased persons, and who would therefore be convenient of appointment. No attempt was made to be specific by limiting the authorized plaintiff to the domiciliary, ancillary or domestic members of the class. The legislature might have provided that the action be maintained by the personal representative of the deceased appointed by a probate court of this state, or by the ancillary representative of the deceased in the state where recovery should be sought; or it might have provided that the action should be brought in the names of the beneficiaries themselves. Where death statutes have been thus specific or exclusive, it would seem that, by the weight of authority, the action can be brought only by the person or persons designated (Am. Law Inst. Restatement, Confl. Laws (Tent.), ss. 431, 432), although there is authority that, because of the remedial character of these statutes, the rights of the beneficiaries will not be allowed to fail for the want of a trustee qualified to bring the action. But with this question we do not have to deal, and upon it no opinion is expressed. The designating language here is general. It is broad enough to include either the domiciliary administrator, or an ancillary administrator, or a foreign or domestic administrator. There is no ambiguity in the words used. An ambiguity can arise only when there is more than one person answering the description.

It would seem that the statute, by the grant of valuable rights for the benefit of the specified beneficiaries, impliedly confers upon the probate courts of any state where the enforcement of such right may be properly sought the power to appoint an administrator who may bring the action. *Southern Pacific Co.* v. *De Valle Da Costa*, 190 Fed. Rep. 689; *Howard* v. *Railway*, 133 Tenn. 19; Goodrich, Confl. Laws, Horn Book Series, 210, 211. But it does not follow therefrom that such an administrator is alone eligible to bring the action.

While it may fairly be assumed that the legislature had in mind the domestic administrator if there be one, there is nothing in the language showing an intention to restrict the court in the exercise of its powers, under the principles of comity, to recognize the domiciliary administrator in the absence of a local representative. It is our conclusion that the legislature used the words "the administrator of the deceased party" as inclusive of any representative who, by comity or otherwise, may be admitted to sue in this forum without infringing any principle of state policy. See 31 Harv. Law Rev. 1162, 1163. What was said by the court in *Anderson* v. *Company*, 210 Fed. Rep. 689, 691, 693, 694, in relation to the federal employers' act is pertinent to the issue here. That act invested the right of action in the "personal representative" of the deceased. Replying to the contention that the domiciliary administrator only was intended the court there said: "The statute employs the generic term 'personal representative,' and so describes a familiar class that would naturally include members that are ordinarily appointed in outside jurisdictions for legitimate objects of administration. In the absence then of express restriction to particular members of such a class, it can hardly be presumed that there was legislative apprehension of abuses from inclusion of the whole class. . . . Now, the effect of the remedial nature of the . . . Act and the representative character of the present suit cannot escape attention in a situation like this. Both of these features, together with the liberal construction they manifestly imply, would seem to be inconsistent with the idea that a right of action was vested solely in the domiciliary administrator. . . . the controlling purpose of the act of Congress, . . . is to benefit the surviving relatives, not the personal representative, of the deceased. Hence, as it seems to us, it is more in consonance with the statute, and is but giving effect to one of its paramount objects, so to construe it as to permit any validly appointed personal representative of a deceased employé to maintain the suit; and especially must this be so where it is plain, as here, that no injustice can thereby result either to the beneficiaries or

the defendant." See also *Louisville & Nashville Railroad Co.* v. *Jones*, 215 Ky 774.

In the interpretation of the special statutes in the several states, modeled like ours on Lord Campbell's act, there is much conflict of authority as respects the person intended to be authorized to bring the action by the various general appellations employed. The question of the legislative intention has arisen under a great variety of circumstances and it would be impossible to reconcile all the decisions. The conclusion which we have reached as applied to the situation here presented, however, is supported by well considered cases, where like questions have arisen under the same or analogous circumstances. *Pearson* v. *Railroad*, 286 Fed. Rep. 429; *Robertson* v. *Railway*, 122 Wis. 66; *Hodges* v. *Kimball*, 91 Fed. Rep. 845; *Knight* v. *Railway*, 160 Iowa 160; *Wilson* v. *Tootle*, 55 Fed. Rep. 211; *McCarty* v. *Railroad*, 62 Fed. Rep. 437; *Florida &c. Co.* v. *Sullivan*, 120 Fed. Rep. 799; *Dodge* v. *Hudson*, 188 Fed. Rep. 489; *Boulden* v. *Company*, 205 Fed. Rep. 264; *Wabash &c. Co.* v. *Shacklet*, 105 Ill. 364; *Purple* v. *Whithed*, 49 Vt. 187, 189; *Midland &c. Co.* v. *Lemoyne*, 104 Ark. 327, 336, 337. See *Anderson* v. *Railroad*, 128 Tenn. 244; *Louisville &c. Co.* v. *Jones*, *supra;* 8 R. C. L., Death, 48.

We have here a non-resident decedent who, so far as appears, left neither property, creditors nor beneficiaries within this state. The record discloses no ground for the appointment of an administrator in this state except for the special purpose of enforcing the rights of the beneficiaries under our statute. The plaintiff herself is the principal, if not the only beneficiary, and no other party in interest appears either seeking administration here or asking for protection against the plaintiff. At the time the action was brought the plaintiff, as domiciliary administratrix, was the sole probate representative of the deceased. Had the defendant settled with her in good faith and accepted her discharge there would seem to be no question but that it would have been protected thereby. *Cogswell* v. *Railroad, supra,* 195; *Luce* v. *Railroad, supra,* 590, 591, and cases cited; *Hodges* v. *Kimball, supra,* 847. Had the plaintiff's suit proceeded to judgment without objection, satisfaction thereof would have afforded no less protection. The sole legitimate interest of the defendant, as respects the official character of the plaintiff, is to be protected against the parties in interest. See *Worthen* v. *Railroad*, 77 N. H. 520. The suggestion in argument that the defendant would not be so protected by a judgment in the suit as instituted is without merit. It seems to be well settled that a judgment for damages for the wrongful death of a

person is a bar to an action in another state to recover damages of the same character and for the same death, where the real parties in interest are the same, even though the nominal parties are different. 53 A. L. R. 1275, *note*; *McCarron* v. *Railroad*, 239 Mass. 64; *Louisville &c. Co.* v. *Jones, supra*, 774. This principle has been given even a broader application in this state. *Lomas* v. *Hilliard*, 60 N. H. 148, 150.

Whether a domiciliary administrator should be required to procure ancillary appointment here, will depend upon whether such course is desirable for the convenience or protection of the parties. If, upon objection to the maintenance of a suit by the foreign domiciliary administrator, it is made to appear that the interest of either party or any beneficiary will be promoted or better protected by requiring the appointment of and the substitution of an ancillary administrator such a course will be pursued.

Until objection was made the plaintiff was the undisputed trustee for the statutory beneficiaries. As the action, except for such objection and the consequent appointment of a domestic representative, would have been maintainable as brought, the writ is amendable by the substitution of the ancillary for the domiciliary administratrix. The substitution of one qualified representative for another is not the commencement of a new action, but merely the maintenance of the action in a more approved form. It follows that the defendants' contention that the action was not seasonably brought is without merit. There was no error in the ruling that the plaintiff was not precluded by law on the record from maintaining the suit for her beneficiaries under the statute.

*Exceptions overruled.*

All concurred.