235 F.2d 142
 MOORE-McCORMACK LINES, Inc., Cross-Libellant-Appellant,
v.
Claire S. McMAHON, executrix under the will of Patrick
McMahon, Respondent-Appellee.
MOORE-McCORMACK LINES, Inc., Cross-Libellant-Appellant,
v.
Luisa Virginia WALL, administratrix of the estate of Edward
T. Wall, Respondent-Appellee.
MOORE-McCORMACK LINES, Inc., Cross-Libellant-Appellant,
v.
Jean O. RICHARDSON, executrix under the will of Harold R.
Richardson, Respondent-Appellee.
 No. 316, Docket 23960.
 United States Court of Appeals Second Circuit.
 Argued May 10, 1956.
Decided June 29, 1956.
 
 Eugene Underwood, New York City (Burlingham, Hupper & Kennedy and Robert B. Pohl, New York City, on the brief), for cross-libellant-appellant.
 Edwin M. Bourke, New York City (Paul C. Matthews, New York City, on the brief), for respondent-appellee McMahon.
 William F. Andersen, New York City (Bigham, Englar, Johns & Houston, New York City, on the brief), for respondents-appellees Wall and Richardson.
 Before CLARK, Chief Judge, and FRANK and HINCKS, Circuit Judges.
 CLARK, Chief Judge.
 
 
 1
 Libellant's vessel the Mormackite, bound from Vitoria, Brazil, to Baltimore, Maryland, sank at sea on October 7, 1954, with a loss of 37 of her 48-man crew. To meet claims of survivors and next of kin of decedents, libellant filed its petition below for exoneration from or limitation of liability; and in this proceeding unmerous claims were filed, including those by the personal representatives of the estates of the vessel's master, Patrick McMahon, its chief officer, Harold R. Richardson, and its chief engineer, Edward T. Wall, all of whom were lost. Libellant, acting on the basis of testimony from the survivors that the loss of the ship was due to the negligence of these officers, filed a cross-libel against the representative of each estate, asserting a claim for indemnity for amounts it might be forced to pay. All three representatives excepted to the cross-libels on the grounds that libellant's claims abated with the officers' deaths and that no cross-libels can be filed to claims in the limitation proceeding. Acting on the second or procedural ground only, Judge Clancy sustained the exceptions; and this appeal from the resulting decrees followed.
 
 
 2
 We think the court was in error in its view of admiralty procedure. While the admiralty rules do not specifically regulate the practice as to cross-libels, Admiralty Rule 50, 28 U.S.C., providing for security for costs for a cross-libel 'filed upon any counterclaim arising out of the same contract or cause of action for which the original libel was filed,' has been taken as authorizing such libels arising out of the same contract or cause of action as that sued upon. The required or suggested condition is clearly fulfilled here. In fact all the various claims to be considered arise out of the one accident and loss as a single cause; and the testimony must be either identical or greatly overlapping, so much so that economy of trial litigation suggests the desirability of one trial only. And we think our previous holdings, In re United States Steel Products Co., 2 Cir., 24 F.2d 657, 659, and The Steel Inventor, 2 Cir., 43 F.2d 958, 961, certiorari denied Bell v. United States Steel Products Co., 283 U.S. 819, 51 S.Ct. 344, 75 L.Ed. 1435, are direct authority for this course. The court below distinguished the cross-libels there against cargo claims in limitation of liability proceedings as being against the res, while the present claims were said to arise out of the relationship of the parties. But we see no basis in reason or the authorities for such a distinction; and none was drawn in the recent persuasive decision of Judge Dobie for his court in British Transport Commission v. United States, 4 Cir., 230 F.2d 139, 143-145, upholding cross-claims in limitation proceedings. Judge Clancy said that we 'know of no authority that permits such an alleged cross-libel.' As stated, we think there is authority; but in any event, approach to modern admiralty as to modern civil procedure should be to permit convenient practice where we know of no authority that forbids.
 
 
 3
 Appellees urge that the decision should be affirmed because in no event may there be a recovery on the cross-libels. But we do not think this can be said with assurance at this time, and it is appropriate that the cases be remanded for proper responsive pleading and full trial of such issues as may be raised in due course. With respect to appellees' first point that these are claims in tort which in admiralty do not survive the respondents' death, it should be noted that even as to torts there may be a question as to whether the more modern principle of survivability will not come to be recognized, notwithstanding, and perhaps as indicated in, Nordquist v. United States Trust Co. of New York, 2 Cir., 188 F.2d 776, 777. See also Sperbeck v. A. L. Burbank & Co., 2 Cir., 190 F.2d 449; Just v. Chambers, 312 U.S. 383, 387, note, 4, 61 S.Ct. 687, 85 L.Ed. 903. But more important for the immediate purpose is appellant's contention that its claim is by way of indemnity and hence contractual, so that it would clearly survive under settled authority. Sperbeck v. A. L. Burbank & Co., supra, 2 Cir., 190 F.2d 449, and cases cited. While the contention is vigorously contested by the appellees, it is at least plausible, and appellant should have the opportunity to develop it.
 
 
 4
 The other contention made is that each claim is on behalf of the estate's representative acting for named dependents (under both the Jones Act, § 46 U.S.C. 688, incorporating § 45 U.S.C. 51, and the Wrongful Death of the High Seas Act, § 46 U.S.C. 761), while the cross-libel is against the representative generally. The matter, too, is illustrated by the reference sometimes made to the representative in her first capacity as a form of statutory 'trustee,' as in Stark v. Chicago, North Shore & Milwaukee Ry. Co., 7 Cir., 203 F.2d 786, 788. But such descriptive phrases do not change the statutory requirement that suit must be by the 'personal representative' of the decedent; see statutes cited supra. Hence by specific requirement of law the claim on behalf of the dependents must be made by the same person against whom claims owed by the estate will be asserted. Of course it is obvious as well as unimportant here that the representative may owe differing obligations, as one to a named class of dependents and another to all claimants, including creditors and legatees. For there is no requirement in modern procedure that claims be mutually offsetting, cf. F.R.C.P., rule 13(c), 28 U.S.C., and discussion in Clark on Code Pleading 650-652 (2d Ed. 1947); and the mere fact that the widow here as fiduciary may have different responsibilities does not prevent the convenient single trial of these claims. Note the free filing of counterclaims by or for personal representatives authorized by N.Y. Civil Practice Act, §§ 268, 269, and see Clark on Code Pleading 672, notes 142-144 (2d Ed. 1947). Thus there may be scope for the operation of the doctrine of res judicata[1] and for contemporaneous judgments in favor of the representative on behalf of herself as widow and against her as representative of the estate generally, though of course we do not and should not try to forecast the results at this time. The issue here presented is of practical importance, since the appellees appear to be not subject to personal service in the district
 
 
 5
 Reversed and remanded.
 
 
 6
 FRANK, Circuit Judge (dissenting).
 
 
 7
 I agree with my colleagues' interpretation of Admiralty Rule 50 and with their expressed attitude towards the survival of the alleged claims by appellant against the estates of the three deceased ship's officers. However, I do not agree with the last paragraph of my colleagues' opinion. The differece between their view and mine is important: If my colleagues are correct-- i.e., if those estates are already represented by appellees in the limitation proceedings-- then Admiralty Rule 50 applies, and appellant can prosecute its claims against those estates in that proceeding without service of process on appellees (except service on their lawyers). If, however, my colleagues are wrong, then appellant cannot prosecute those claims in that proceeding except by treating the cross-libels as impleading petitions under Admiralty Rule 56-- which requires that appellees be 'duly served' by service of process on them.[1] My reasons for thinking my colleagues in error are as follows:
 
 
 8
 Each cross-libel seeks affirmative relief, against the estate of a particular designated deceased ship's officer, for the loss of appellant's vessel (alleged to have had a value of $1,000,000) and for the amount of all awards against appellant (alleged to be potentially about $11,000,000). My colleagues in concluding that the cross-libels (thus seeking recovery in that large amount, far in excess of the claims filed respectively by the appellees) properly bring into the limitation proceedings the 'estates' of the respective deceased officers, rest their decision on their key statement that 'the claim on behalf of the dependents' must be made by the same person against whom 'claims owed by the estate' will be asserted.
 
 
 9
 This key statement thus treats a claim on behalf of the dependents as if substantially related to a claim on behalf of the 'estate.' This I think erroneous. The 'dependents' and the 'estate' have no relation. No one of the appellees could-- or did-- file in the limitation proceeding a claim on behalf of the 'estate' of the particular deceased officer.
 
 
 10
 No one of those 'estates' ever had any claim against appellant. Each of the filed claims was explicitly asserted under the Jones Act-- § 46 U.S.C.A. 688-- or the Death on the High Seas Act-- § 46 U.S.C.A. 761 et seq. In suing under either of these federal statutes, none of these appellees represents the 'estate' of a decedent' Under the Jones Act (through incorporation by a reference of F.E.L.A., § 46 U.S.C.A. 51) the appellees respectively can and do represent no one except the persons specifically designated in that federal statute, i.e., the widow, or husband, or children, or parents, or, if none, the next of kin dependent on the deceased person. Under the Death on the High Seas Act, each appellee represents exclusively the 'decedent's wife, husband, parent, child, or dependent relative'. If none of the designated persons existed at the time of decedent's death, there could be no recovery by anyone under either Act.[2]
 
 
 11
 The situation, in substance, is the same as if these statutes permitted the designated beneficiaries to sue or file claims directly, on their own behalf, and as if they had done so. Only for convenience do the statutes provide that suits or claims for their benefit shall be brought or filed by one who also serves as the representative of the decedent's estate. That representative has merely the legal title to the claim under the Jones Act or the Death on the High Seas Act.[3] He is therefore often called a 'special statutory trustee.' See, e.g., Chicago, B. & Q.R. Co. v. Wells-Dickey Trust Co., 275 U.S. 151, 48 S.Ct. 73, 72 L.Ed. 216; also Lindgren v. United States, 281 U.S. 38, 41, 50 S.Ct. 207, 74 L.Ed. 686; Wiener v. Specific Pharmaceuticals, Inc., 298 N.Y. 346, 83 N.E.2d 673; Cooper v. American Airlines, 2 Cir., 149 F.2d 355, 162 A.L.R. 318; Stark v. Chicago, North Shore & Milwaukee Railway Co., 7 Cir., 203 F.2d 786, 788. The representative, in such a suit, does not act for the benefit of, or represent, or appear for, the decedent's estate.[4] It is without significance that he or she happens also, in another capacity, to represent the estate. It is as if the statutes authorized suit by a trustee appointed by a court. For, as a 'special statutory trustee,' the representative is wholly a stranger to the decedent's estate. Those for whom he may recover are in no way liable for any claims against the decedent or against his estate even if the estate is insolvent. Nor can the estate's creditors, or the decedent's legatees as such, share in any recovery by the 'special statutory trustee,' since the claim against the appellant is not an asset of the estate.
 
 
 12
 In Chicago, B. & Q.R. Co. v. Wells-Dickey Trust Co., 275 U.S. 161, 48 S.Ct. 73, 72 L.Ed. 216, the Supreme Court said (per Brandeis, J.): 'While the suit thereon must be brought by the personal representative of the employee, he sues as trustee for the person or persons on whose behalf the act authorizes recovery. * * * When it (the cause of action) accrues, there is an immediate, final and absolute vesting; and the vesting is in that one of the several possible beneficiaries who, according to the express provision in the statute, is declared entitled to be compensated.' Illuminating is Southern Ry. Co. v. Stewart, 8 Cir., 115 F.2d 317, 321. There an administratrix of a deceased railroad worker brought suit, in a federal district court, under the F.E.L.A. She agreed, out of court, to settle for $5,150, and filed a petition, with the Probate Court in which the administration of the decedent's estate was pending, for approval of the settlement. That court made its order accordingly. Subsequently, however, she moved the Probate Court to set aside its approval order, on the ground that the settlement was the result of fraud. The Probate Court denied the motion. She then continued with her suit in the federal court. The jury gave her a verdict of $17,500, and the district judge entered judgment on the verdict. On appeal, the defendant railroad contended that the Probate Court's order, approving the settlement, barred plaintiff's suit. The Eighth Circuit rejected this argument. In holding that the Probate Court had had no jurisdiction of the claim asserted under the federal Act, that court said: "The personal representative does not sue by his inherent right as representative of the estate of the decedent, but by virtue of statutory designation and as trustee for the person or persons on whose behalf the act authorizes recovery. And the recovery is not for the benefit of the estate, is not an asset thereof, but is for the personal benefit of the beneficiary or beneficiaries designated by the statute'. Chicago, Burlington & Quincy R. Co. v. Wells-Dickey Trust Co., 275 U.S. 161, loc. cit. 163, 48 S.Ct. 73, 72 L.Ed. 216, 59 A.L.R. 758; Taylor v. Taylor, 232 U.S. 363, 34 S.Ct. 350, 58 L.Ed. 638; Mann v. Minnesota Electric Light & Power Co., 10 Cir., 43 F.2d 36; American Car & Foundry Co. v. Anderson, 8 Cir., 211 F. 301, 308.'
 
 
 13
 In Wiener v. Specific Pharmaceuticals, Inc., 298 N.Y. 346, 83 N.E.2d 673, 674, plaintiff, a Michigan administrator, brought suit in New York for wrongful death under the Michigan statute. It is settled doctrine in New York that an ordinary foreign administrator may not sue in the court of that state without first obtaining ancillary letters in New York. Plaintiff had not obtained such letters. Nevertheless, the court held he could maintain the suit, saying: 'The underlying principle is clear. An administrator is 'a special statutory trustee' if so constituted by the law of the place where the wrong causing death occurred. See Baldwin v. Powell, 294 N.Y. (130) at page 134, 61 N.E.2d (412) at page 414. And he is to be regarded as such a trustee, we said in the Baldwin case, if the wrongful death statute of the foreign jurisdiction authorizes him to sue 'for the benefit of a designated person or group of persons'. Accordingly, we turn to the law of Michigan. * * * In calculating the pecuniary injury resulting from wrongful death, the only factor to be considered, the Michigan court has ruled, is whether there were persons of the specified class occupying a position entitling them to look to the decedent for support, maintenance or services. Such persons, and only such persons, are to receive the amount recovered for 'pecuniary injury'. In other words, since such an award does not represent money to which the deceased himself would have been entitled had he survived, it is not an item of damage to which his general estate may lay claim. * * * There can be no doubt, considering all this, that the damages allowable in Michigan for a pecuniary injury resulting from wrongful death are referable solely to the loss suffered by the persons designated. That being so, the amount of recovery is held subject to a special trust, and the administrator seeking such recovery is, by the same token, a statutory trustee. * * * It has been repeatedly observed that the reason for insisting that a foreign administrator obtain ancillary letters before suing in another State is to assure that the decedent's domestic creditors shall have their claims paid out of any fund recovered for the benefit of the debtor's estate. See, e.g., Taylor v. Syme, 162 N.Y. 513, 518, 57 N.E. 83, 84; Toronto General Trust Co. v. Chicago, Burlington & Quincy R. Co., 123 N.Y. 37, 46, 47, 25 N.E. 198, 200, 201; Ghilain v. Couture, 84 N.H. 48, 52, 146 A. 395, 65 A.L.R. 553; Boulden v. Pennsylvania R. Co., 205 Pa. 264, 54 A. 906. In the Toronto case, supra, for instance, this court declared, 'The courts will not lend their aid to (foreign administrators) in the removal of the assets from this state to the possible prejudice of domestic creditors'. 123 N.Y. at pages 46, 47, 25 N.E. at page 200, and in the Ghilain case, supra, the rule was said to be 'based solely upon the policy of the courts of each state to protect resident creditors of the decedent against the withdrawal into another state of assets on which they may equitably rely for the payment of the debts that may be due them.' 84 N.H. at page 52, 146 A. at page 398; italics supplied. The point need not be further labored. The rule barring foreign administrators from our courts is just and reasonable only if applied in cases, first, where there are domestic creditors, and second, where the foreign administrator sues to recover a fund in which such creditors may share. Obviously, no prejudice threatens local creditors of the decedent if the wrongful death statute makes no provision for recovery on behalf of the general estate and, in fact, bars creditors' claims against the proceeds. Suing under such a statute, plaintiff acts, not as an officer of the foreign court appointed by it as alter ego for the estate, but as a trustee for the designated beneficiaries, the actual and real parties in interest. In such a case, the amount recovered truly constitutes a special fund for their exclusive benefit, and, since it is not subject to the claims of others, no danger exists that failure to require local qualification may harm or prejudice domestic creditors. With the primary and, perhaps, only reason for the rule thus removed, the rule itself has no sensible application and should not be invoked in this class of case. For that reason, we conclude, as have the courts of a number of other jurisdictions, that a foreign administrator, suing as statutory trustee, has standing to maintain a wrongful death action in this State upon the strength of his original letters. See, e.g., Cooper v. American Airlines, 2 Cir., 149 F.2d 355, 162 A.L.R. 318; Pearson v. Norfolk & Western Ry. Co., D.C., 286 F. 429; Reilly v. Antonio Pepe Co., 108 Conn. 436, 143 A. 568; Knight v. Moline, East Moline & Watertown Ry. Co., 160 Iowa 160, 168, 140 N.W. 839; De Mattei v. Missouri-Kansas-Texas R. Co., 345 Mo. 1136, 1140, 139 S.W.2d 504; Ghilain v. Couture, 84 N.H. 48, 146 A. 395, 65 A.L.R. 553, supra; Boulden v. Penn.R. Co., 205 Pa. 264, 54 A. 906, supra; Connor v. New York, New Haven & Hartford R. Co., 28 R.I. 560, 68 A. 481, 18 L.R.A.,N.S., 1252; see, also, Goodrich on Conflict of Laws (2d ed.), pp. 254-255; Restatement, Conflict of Laws, 467, comment, p. 567; 8 R.C.L., Death, § 48, p. 765.'
 
 
 14
 So here, e.g., appellee Claire McMahon did not file a claim or appear in the limitation proceeding in her capacity as representative of Patrick McMahon's estate. Since, in that capacity, she is not a party to the proceeding, there is no basis for a counterclaim in that proceeding against her in that capacity. And, for reasons stated above, there can be no valid counterclaim against her as a 'special statutory trustee'; accordingly, as such She cannot here be made a party to a cross-libel. The same is true as to the other appellees.[5]
 
 
 15
 Of course, without resort to a cross-libel, appellant can set up as a defense to each appellee's claim, or in reduction of that claim, the negligence of that appellee's decedent. But each of the cross-libels is not defensive. As noted above, each asks an affirmative decree in a huge sum far in excess of any sum any of appellees can possibly recover in the limitation proceeding. For such excess, no one of the appellees is liable as a 'special statutory trustee.'Although I think none of appellees is a proper respondent to a cross-libel, yet each so-called cross-libel may be treated as an impleading petition under Admiralty Rule 56, impleading such appellee, as a general representative of the estate of his or her decedent, on a claim to appellant by way of indemnity (or the like). As I previously noted, Rule 56 requires that such an impleading petition be 'duly served.' I would, therefore, remand with directions to give appellant an opportunity to serve each appellee with the so-called cross-libel. I think that if, but only if, an appellee is thus 'duly served,' the estate represented by him or her will become subject to the decrees of the court in the limitation proceeding.
 
 
 
 [1]
 Compare Note, Failure to Plead Federal Compulsory Counterclaim as Bar to State Suit, 15 U. of Chi.L.Rev. 446, 447, criticizing Campbell v. Ashler, 320 Mass. 475, 70 N.E.2d 302: 'To circumvent this conclusion (or res judicata against the administrator) by asserting that the administrator acts as a different person in each action is to pursue a legal fiction to an absurd extreme.'
 
 
 [1]
 Admiralty Rule 56 reads as follows:
 'Rule 56. Right to bring in party jointly liable
 'In any suit, whether in rem or in personam, the claimant or respondent (as the case may be) shall be entitled to bring in any other vessel or person (individual or corporation) who may be partly or wholly liable either to the libellant or to such claimant or respondent by way of remedy over, contribution or otherwise, growing out of the same matter. This shall be done by petition, on oath, presented before or at the time of answering the libel, or at any later time during the progress of the cause that the court may allow. Such petition shall contain suitable allegations showing such liability, and the particulars thereof, and that such other vessel, or person ought to be proceeded against in the same suit for such damage, and shall pray that process be issued against such vessel or person to that end. Thereupon such process shall issue, and if duly served, such suit shall proceed as if such vessel or person had been originally proceeded against; the other parties in the suit shall answer the petition; the claimant such vessel or such new party shall answer the libel; and such further proceedings shall be had and decree rendered by the court in the suit as to law and justice shall appertain. But every such petitioner shall, upon filing his petition, give a stipulation, with sufficient sureties, or an approved corporate surety, to pay the libellant and to any claimant or any new party brought in by virtue of such process, all such costs, damages, and expenses as shall be awarded against the petitioner by the court on the final decree, whether rendered in the original or appellate court; and any such claimant or new party shall give the same bonds or stipulations which are required in the like cases from parties brought in under process issued on the prayer of a libellant.'
 
 
 [2]
 Lindgren v. United States, 281 U.S. 38, 50 S.Ct. 207, 74 L.Ed. 686
 Under the Jones Act, there may be two kinds of claims, one for wrongful death and sometimes, by way of survivorship, one for the decedent's personal injury and suffering which occurred before his death. Recovery of both kinds is for the exclusive benefit of the beneficiaries designated in the Act (i.e., in F.E.L.A. through its incorporation by reference in the Jones Act). See St. Louis, Iron Mountain & Southern Railway Co. v. Craft, 237 U.S. 648, 658, 35 S.Ct. 704, 59 L.Ed. 1160; Chicago B. & Q. Railroad Co. v. Wells-Dickey Trust Co., 275 U.S. 161, 48 S.Ct. 73, 72 L.Ed. 216.
 
 
 [3]
 Except to the extent that the representative may herself or himself be one of the beneficiaries under the statutes
 
 
 [4]
 Lindgren v. United States, 281 U.S. 38, 41, 50 S.Ct. 207, 74 L.Ed. 686; 2 Norris, The Law of Seamen (1952) 328-329; 2 Moore, Federal Practice (2d) Section 17.14, p. 1374; 16 Am.Jr. p. 186
 
 
 [5]
 There is no indication that each appellee is (1) the sole statutory beneficiary and also (2) the sole beneficiary of the estate of his or her decedent. If this had been alleged in the cross-libels, then I think we should have to look through the mere formal status of the parties and allow the cross-libel. For, in such a case, the party to the suit, i.e., the personal representative, who will benefit from any verdict against Moore-McCormack, is also the one who must pay any judgment on the cross-libel if the decedent's estate is sufficiently large. Also, there would be no danger of cluttering up the lawsuit of one who has no interest at all in the cross-libel
 Clark, on Code Pleading (2d ed. 1947) says, at pp. 671-672, 'Where suit is brought by or against one in a representative capacity, as a trustee, executor, or administrator, the desirability of keeping accounts separate, and of avoiding possible prejudice to the party represented, or unfairness or inconvenience to the party bringing suit, is thought to outweigh the policy of allowing the defendant to litigate all controversies in the one suit. Consequently, except where the individual bringing or defending the action clearly appears to be the sole 'real party in interest,' no counterclaim is provable against him or in his favor individually.' Thus, some courts have allowed the assertion of a counterclaim by and against a trustee in his representative capacity where it appears that he is the sole beneficiary and all of the creditors of the estate have been paid off. Anderson v. Carlson, 201 App.Div. 260, 194 N.Y.S. 112; Blood v. Kane, 130 N.Y. 514, 29 N.E. 994, 15 L.R.A. 490; Cf. Chicago, R.I. & P. Ry. Co. v. Schendel, 270 U.S. 611, 617-622, 46 S.Ct. 420, 70 L.Ed. 757; Vaughn's Adm'r v. Louisville & N.R. Co., 297 Ky. 309, 179 S.W.2d 441, 152 A.L.R. 1060.